In the Matter of the Judicial Settlement of the Accounts of GEORGE W. CHAUNCEY, Trustee, etc.

The will of K. gave her residuary estate to her executors in trust, to receive rents, profits and income, and after paying therefrom certain specific annuities, among them one of $500 to D., her adopted son, for his support during minority, and $1,000 thereafter during the life of her husband, to apply the balance to the use of her husband during his life. After his death to pay to D. $2,000 per annum during his life. D. survived the husband, and for a number of years after the death of the latter the annual income was insufficient to pay the said annuity in full. Subsequently it exceeded that amount. Upon a settlement of the accounts of the trustee, *held*, that, in the absence of any language in the will showing a different intent, D. was entitled to have the surplus applied in the first instance to the satisfaction of deficiencies in the annuity for the years it was not paid in full.

*Casamaijor* v. *Pearson* (8 Cl. & Fin. 100), distinguished.

*It seems*, if on any year, after full payment of deficiencies for the years preceding, there remained a surplus of income, as it was undisposed of by the will, it would have been competent for the trustees to have paid it over for distribution among the next of kin.

*Baker* v. *Baker* (6 H. L. Cas. 616), distinguished.

*In re Chauncey* (53 Hun, 134) reversed.

(Argued December 18, 1889; decided January 14, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made June 28, 1889, which reversed in part a judgment in the above entitled proceeding entered upon a decision of the court on trial at Special Term.

This was a proceeding for the judicial settlement of the accounts of George W. Chauncey, as trustee under the last will and testament of Mary L. Kirby, deceased.

The material facts are set forth in the opinion.

*Jesse Johnson* for appellant. The clear, literal construction of the will gave Delaney a fixed and certain legacy. (*Stewart* v. *Chambers*, 2 Sandf. Ch. 382; *Cochrane* v. *Walker*, 4 Dem. 164; *Booth* v. *Coulton*, L. R. [5 Ch. App.] 684; *Pitt* v. *Lord Dacre*, L. R. [3 Ch. Div.] 295.

*William C. Holbrook* for respondent. The gift to Delaney is not independent of that to William L. Kirby, the husband of the testatrix, but is grafted upon, or excepted out of it, and is, in a sense, secondary to it, in that it was the primary intent of the testatrix to provide for her husband. (*Delaney* v. *Van Aulen*, 84 N. Y. 16; Perry on Trusts, § 920; *Walker* v. *Beal*, 106 Mass. 109; Story's Eq. Juris. [13th ed.] § 1208; Redfield on Surrogates, 447; Williams on Executors, 1475; *Wager* v. *Wager*, 89 N. Y. 161–166.) There is nothing in the will which plainly indicates that the testatrix intended that any of the annuities given to Delaney should be payable "in any event," or that he should be entitled to have deficiencies in any one or more years made up from any surplus thereafter arising. (*Baker* v. *Baker*, 6 H. L. Cas. 628, 686; *Casamajor* v. *Pearson*, 8 C. & F. 69; *Darbon* v. *Rickards*, 14 Sim. 537; *Tarbottom* v. *Earle*, 11 Wkly. Rep. 680; *Estate of Pierce*, 56 Wis. 560.

Ruger, Ch. J. The question in this case regards the disposition of the surplus income arising in certain years from a trust fund created for the purpose of paying annuities. It is claimed by the annuitant that such surplus is applicable, in the first

instance, to the satisfaction of deficiencies in the annuity occurring in previous years from the insufficiency of annual income to pay them in full; and by the next of kin, that it goes to them as property remaining undisposed of by the will.

The portion of the will under which the question arises reads as follows:

Third. I give, devise and bequeath unto my executors hereinafter named, and to the survivor of them, all the rest, residue and remainder of the estate, real and personal, of which I may die seized and possessed, in trust, nevertheless, to and for the uses and purposes following, that is to say: To receive the rents and profits of such part thereof as shall consist of real estate, and to invest and keep invested upon bond and mortgage of real estate, or in the public funds of the United States, state or city of New York, as they may deem most safe and productive, such part thereof as shall consist of personal estate, and apply said rents and profits of real estate and interest or income of personal estate to the use of my said husband, William L. Kirby, during his natural life, except that they shall apply to the use of James E. Delaney, who was brought up by me, the sum of five hundred dollars per annum thereout, until he shall arrive at the age of twenty-one years, and from and after that time the sum of one thousand dollars per annum thereout, during the life-time of my said husband, William L. Kirby, and from and after the decease of my said husband, the sum of two thousand dollars per annum thereout, during his natural life.

With the exception of a trivial legacy of wearing apparel and silver plate to a relative, the above contains the sole disposition of property made by the will, and the testatrix, therefore, died intestate as to the corpus of her estate, and as to so much of the income thereof as should not be needed for the satisfaction of the annuities charged thereon. So long as William L. Kirby lived no question could arise over the disposition of the surplus, as he was entitled to the whole income after payment of the annuity to Delaney. Delaney arrived

at his majority before the death of the testatrix, and no pay-ments accrued to him under the five hundred dollar provision.

William L. Kirby survived his wife only two years, and during that period Delaney received substantially the amount of his annuity, and the question in the case arises, therefore, over the payment of annuities after that period under the two thousand dollar provision.

For a number of years after the death of William L. Kirby, the annual income from the fund was insufficient to pay the annuity in full to Delaney; but in the course of time it so increased that it exceeded the amount of the annuity, and the disposition of this surplus is the subject of the present controversy. Should it be first applied to the sat-isfaction of the deficiencies of previous years, or does it go to the next of kin as property undisposed of by the will? No such question could, of course, arise under a provision which gave the annual income, or an income not exceeding a certain amount, to one or more legatees from a certain fund; but it is contended that under the circumstances of this case where a fixed sum is given as an annuity *for support* and there is no language in the will showing a different intent, the legatee is entitled to have his annuity made up to its full sum by the accumulations of subsequent years.

Upon a previous appeal to this court upon questions aris-ing under this will (84 N. Y. 16), it was held that the legacy to Delaney was not a demonstrative legacy and was, therefore, not payable from the corpus of the fund in case of a deficiency of income to satisfy the full sum of the annuity. This was obviously correct, since the will plainly provided that the annuity was payable from income alone, and the intention of the testatrix could not be violated by applying the fund itself to the payment of charges which had been otherwise imposed. This decision, however, does not affect the determination of this controversy. That is to be solved by an examination of the will and such imformation as to the intention of the testatrix as may be gleaned from a consideration of both its positive and negative provisions as well as of its omissions.

We do not think much light can be derived, from the particular form observed by the testatrix in creating the trust, as it was inartificially drawn and must be construed according to its legal effect. In terms she creates a trust in the residue of her estate for the benefit of her husband, but excepts from his bequest the payment of certain annuities to Delaney. In legal effect the trust was intended, first, to provide for the payment to Delaney of the annuity given to him, and the balance of the income alone was payable to the husband.

The trust was, therefore, to pay from the income of her estate to Delaney five hundred dollars per annum during his minority; one thousand dollars a year thereafter during the life of William L. Kirby and two thousand dollars a year after his death; and during William L. Kirby's, life to pay to him the balance of the income beyond what was necessary to satisfy Delaney's claim. These sums were not by the will in express terms made payable from the annual income, but constituted a charge upon the aggregate income of the estate. It is obvious that the legacy to Delaney was distinguishable from the provision for the benefit of the husband, for in the one case the husband was to have the gross income less the charge upon it, whatever it might be, and subject to all casualties that might affect it and he could in no event have more than this sum; Delaney was, however, to have a fixed sum which could not be increased beyond the alloted amount. These sums were evidently graduated for his support as they varied according to his probable requirements, and were increased as advancing years might add to his wants and necessities. It was not intended as an exception from the gift to the husband, to be governed by the charactristics and conditions applying to that gift, for it was in terms to continue after his death and to exist as a continuing and independent trust for Delaney's benefit so long as he should live. It was, in the natural course of events, contemplated that Delaney should survive the husband and that his annuity should outlive that to Kirby. The intent clearly implied that it was given for support, implies also an intention that it should be payable periodically

and absolutely to meet the requirements of daily necessities.
This intention might be temporarily defeated by the casualties
affecting all financial transactions; but so long as the property
remained and yielded an income, it was the manifest intention
of the testatrix to give it, to the extent indicated, to the child
she had reared and made the object of her love and pro-
tection.   Aside from her husband, she mentioned no other
object of bounty in her will except Delaney, and no intention
can be derived therefrom that she intended to die intestate as
to any part of the income of her estate, while the specific
provisions thereof remained unsatisfied.   In making these pro-
visions she was not weighing out the payment of a debt or the
satisfaction of legal obligations, but was providing for the
necessities of one whom she supposed had a moral claim upon
her bounty and protection.   She was endeavoring to preserve
the object of her regard from future want and dependence.
She could have had no intention of depriving him of the
amount deemed necessary by her for his support for the benefit
of strangers, in case the casualties of one year impaired the
income of the fund which might, by the prosperity of another
year, be rendered sufficient to meet all of the obligations which
she had charged upon it.   The trust was created for the sole
purpose of paying the income thereof, during the lifetime of
her husband, to him and her adopted child, and it cannot be
supposed that she intended to scrimp them, in the interest of
persons whom she did not regard of sufficient consideration
to be even referred to in her will.   She must, in the natural
course of events, have contemplated that accident, mismanage-
ment, or misfortune might, for one or more years, through the
influence of events which could not have been forseen or
guarded against, render it impossible to pay promptly the
charges fixed upon the income of the trust, and it is incon-
sistent with the design of a provision for support, to suppose
that she intended in such event that the object of her care
and affection should be left without income for the benefit of
persons whom she did not know.   It is impossible for the
wisest and most prudent manager to place pecuniary invest-

ments entirely beyond the reach of financial hazard and risks, but by placing the corpus of her estate in trust she doubtless hoped to preserve a principal which should at least, in the course of years, realize the sums she had charged upon it, and we can find no intent in the will that such income should be payable to strangers, so long as the fixed charges made by her should remain unsatisfied.

The contention of the next of kin would lead to the establishment by the trustees of a financial year which should be inflexible, and whenever the year terminated should require them to close the books and begin a new and independent term for the receipt of income. In such event the lapse of a year without the receipt of income would cause the loss of the annuity to the devisee, no matter how productive the fund might prove for succeeding years. This result must be worked out by reference to the intention of the testatrix, if sustainable at all, but we have heard no reasons drawn from the provisions of the will which support such a theory.

It is claimed, by the next of kin, that the case of *Casamaijor* v. *Pearson* (8 Clark & Fin. 100), is an authority for their contention. We do not so read that case. The facts are somewhat complicated and voluminous, but they may be summarized so as to show the principle governing the decision. The testator gave his whole estate to trustees, and, among other purposes, to invest a sufficient sum to pay two annuities of £400 each to F. and P. during their respective lives, if the fund should prove sufficient to pay them in full, and if not, to divide it proportionately between them, but if the fund proved more than sufficient — to vest the surplus and divide it with the capital sum set apart for the annuities, as the same should become tangible by the death of each annuitant among residuary legatees. In this case the intention of the testator was clearly manifested, as there was an express provision that in case of insufficiency of income there should be paid to the annuitants only so much thereof as was annually realized from the fund invested, and all surplus accumulations as well as the corpus of the estate was given expressly to residuary legatees.

We do not doubt the case was well decided, and in accordance with the expressed intention of the testator. The question here involved is not new in this state, and has, as we read the authorities, been expressly decided in favor of the annuitants. (*Stewart* v. *Chambers*, 2 Sandf. Ch. 382.) In that case the testator, having a wife and two small children, and also four adult children by a former wife, after giving legacies to the latter, directed his executors to convert all the residue of his estate and· invest it in stock or on real security, so to remain until the death or marriage of his wife and until the youngest child became of age. Out of the interest and income they were to pay to his wife an annuity so long as she remained sole, and to his two infant children each an annual sum in half yearly payments, varying according to their age from time to time. Each was to have £1,000 on her marriage, and when the youngest became of age and the · widow's annuity ceased, the residue was to be divided equally between them. The will further provided in the meantime that all the surplus interest and income, after paying the annuities, should be divided among the four adult children semi-annually. The income of the residue of the estate was insufficient to pay the three annuities during ten years that the widow survived. After her death it was more than sufficient to pay the two infants' annuities. It was held that the surplus then arising must be applied to the discharge of the three annuities which accrued prior to the widow's death, before any of it could be divided among the adult children. This conclusion was reached in analogy to the principle that legacies for the support and maintenance of a wife and children do not abate with the general legacies. It was further held that the direction for half yearly payments of annuities and distribution was a regulation under the general intent of the will, as to the time of payment of the annuities and for a division after they were fully paid, and that testator's intent would be violated by a division of the surplus of any half year, leaving any portion of the annuities unpaid which fell due previously. We entirely agree with the conlusions reached by the learned

assistant vice-chancellor in that case and consider them in point here. This case differs from that only in the fact that no specific disposition of the surplus is made by the will, which leaves it free from the difficulty suggested, of an ulterior disposition of the fund in question. We are of the opinion that in case there had been a surplus of income in any year after full payment of preceding annuities, it would have been competent for the trustees to have paid it over for distribution among the next of kin, as a fund would thereby have been created which was not disposed of by the will; but that no such distribution could properly be made while any part of such annuities remained unpaid.

The case of *Stewart* v. *Chambers* was followed by the learned surrogate of New York in *Cochrane* v. *Walker* (4 Dem. 164). The views expressed are also fully sustained by recent English authorities. *Booth* v. *Coulton* (L. R. 5 Ch. App. 684) and *Pitt* v. *Lord Dacre* (L. R. 3 Ch. Div. 295) may be referred to as supporting the doctrine contended for. The case of *Baker* v. *Baker* (6 H. of L. Cas. 616) is not in point. The question in that case was whether the annuity was a demonstrative legacy payable out of the corpus of the fund, and it was held that it was not, and in that respect agrees with the view of this court upon the construction of the will under consideration. (*Delancy* v. *Van Aulen*, 84 N. Y. 16.)

In accordance with these views, the order of the General Term should be reversed and the judgment of the Special Term affirmed with costs of the appeal in this court and the Supreme Court.

All concur.

Judgment reversed.