ALBERT S. COMSTOCK ET AL., TRUSTEES, *vs.* STRONG
COMSTOCK ET ALS.

Third Judicial District, New Haven, January Term, 1906.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A will created a trust under which the trustees were directed to pay to
the widow of the testator, " out of the net annual income," $1,200
a year, payable every six months or oftener, during her life, and
from " any excess of said net annual income " were to pay an an-
nuity to her sister. The will then provided for the payment of the
salary of a home missionary out of the annual income remaining
after the foregoing bequests and certain others had been discharged,
and directed the disposition of any excess of income in any year.
Owing to the loss by fire of a business block which formed part of
the trust property, the income for several years was insufficient to
meet the annuities payable to the widow and her sister. *Held :—*
1. That these annuities were charged not upon income generally, but
upon the net income for each year, which was treated as a separate
entity, and therefore neither these beneficiaries nor their personal
representatives were entitled to have deficiencies in any year made
good from after-acquired income.
2. That the fact that the gifts to the widow were in lieu of dower was
immaterial.

Submitted on briefs January 16th—decided March 8th, 1906.

SUIT for the construction of the will of William E. Ray-
mond of New Canaan, deceased, brought to and reserved
by the Superior Court in Fairfield County, *George W.
Wheeler, J.,* upon an agreed statement of facts, for the
advice of this court.

William E. Raymond of New Canaan died in 1890, leav-
ing a considerable estate and a will. There survived him
his widow, and her sister, Susan E. Comstock, but no issue.
By his will he gave his wife his personal effects, $5,000 in
cash, $1,200 for her support during the first year after his
decease, and the life use of certain real estate, including his
homestead. Other legacies, amounting to $4,600, are con-
tained in the will and codicil. All the rest and remainder

of his estate was given in trust. The will, after defining the powers and duties of the trustees in the management of the trust estate, contains the following directions, recited so far as pertinent, as to the appropriation and distribution of the fund and its income, to wit : " and after paying out of the annual income thereof all lawful taxes, and the necessary and reasonable expenses and charges incident to said trust, to pay out of the balance or net annual income thereof the sum of twelve hundred dollars in each and every year, and in that proportion for all the parts of a year, to my said wife, for her own use, during her natural life, in equal half yearly payments, at the end of every six months, or oftener as may be convenient for said trustees and for her.

" And out of any excess of said net annual income, after paying said annual sum to my said wife, I direct said trustees to pay in like manner the sum of seventy dollars annually to Susan E. Comstock, sister of my said wife, for her own use during her natural life.

" *Seventh.* I direct said trustees and their successors to expend such sums of money as they shall find necessary, not exceeding fifteen dollars in any year, out of said net income, in causing my cemetery lot, where I shall be buried, to be kept in a neat and proper condition, and the grass thereon properly cut; and if any repairs shall be needed thereon to any of the tombstones or structures or otherwise, I authorize such trustees to cause such repairs to be made out of said net income.

" *Eighth.* As soon as the net annual income of said residue of my estate so held in trust, after all the foregoing provisions of my will are fully satisfied, shall be sufficient therefor, and so long as said net income shall be so sufficient, I direct said trustees and their successors in said trust to employ, at a salary of sixteen hundred dollars per year, to be paid out of said net annual income in equal quarter yearly payments, an orthodox evangelical clergyman of the Congregational church, . . . to serve as a home missionary or evangelist in laboring and preaching the Gospel of Jesus Christ in such places within the State of Connecticut and to

and among such people therein as are destitute of or not easily accessible to, or not disposed otherwise to avail themselves of, the ordinary privileges of regular attendance upon divine worship. . . .

" *Tenth.* . . . If at any time the net income shall not be sufficient for the purposes aforesaid, then while such deficiency continues, I direct that no such clergyman be so employed, but that the income be added to the principal and the fund accumulate until the same shall produce a sufficient income; . . .

" *Eleventh.* If in any year there shall be an excess of said net income after fully satisfying all the provisions hereinbefore contained, including the employment during such year and the payment of such clergymen, then I direct such excess to be added to and to become part of the principal; provided that if such excess in any year shall be more than two hundred dollars, then I give all of such excess over and above said sum of two hundred dollars, to The American Home Missionary Society and The American Board of Commissioners for Foreign Missions, corporations known by those names respectively, to be equally divided between them, and to be applied to their respective charitable uses and purposes.

" *Twelfth.* But if said Congregational Society shall refuse to perform the duties imposed upon it by the provisions hereof, either at the commencement of said trust or at any future time, or shall by dissolution or otherwise become unable to do so, then, and from thenceforth, I direct that no such clergyman be so employed, and I direct that said trustees fully comply with all the directions herein contained in respect to the payment of said annual sums to my said wife, and to said Susan E. Comstock, and to the care of my cemetery lot, during the lives of my said wife and of said Susan E. Comstock, and of the survivor of them, and I direct said trustees to pay all the excess of said net income to The American Home Missionary Society, and to The American Board of Commissioners for Foreign Missions aforesaid, in equal shares, annually, to be applied by them to their re-

spective charitable uses and purposes. And at the decease of my said wife and of said Susan E. Comstock, or, as the case may be, upon the refusal of said Congregational Society thereafter at any time longer to discharge the duties so as aforesaid imposed upon it, then I give and bequeath out of said trust fund the sum of three hundred dollars to the New Canaan Cemetery Association; . . . and I give, devise and bequeath, all the residue and remainder of said estate so held in trust, free and discharged of said trust, to The American Home Missionary Society and The American Board of Commissioners for Foreign Missions aforesaid, to be equally divided between them, and direct that the share of each of them therein shall be invested at interest and kept and maintained as a perpetual fund, the annual income only of which shall be used and applied by them respectively to their respective charitable uses and purposes."

The will provides that its provisions in favor of the wife should be in lieu of dower.

The testator's estate was duly settled, and the residue thereof passed into the hands of the plaintiffs, who qualified as trustees and have since so acted. For some years and down to 1899, the net income received by them sufficed to satisfy the annual payments to be made to the widow and sister. In the latter year a block of buildings, comprising a considerable part of the trust estate and the rents of which formed a large part of the income derived by the trustees, was burned After a considerable delay it was rebuilt. As a result of the destruction of the building the net income became insufficient to make said payments in full, and that condition continued until the death of Mrs. Raymond, February 7th, 1905. The sister still survives. The payments to Mrs. Raymond from the time that the income began to be insufficient as aforesaid until her death aggregated nearly $3,500 less than the amounts she would have otherwise received. The deficiency in those to her sister now amounts to nearly $500.

Mrs. Raymond was in her sixty-first year when the will was republished by the codicil, and in her sixty-fourth at the

time of the testator's death. She and Mr. Raymond had lived happily together during some fifty years of married life. She had substantially no income after her husband's death except such as came to her through her husband's testamentary provision for her. The defendant executors are the duly qualified executors of her will. They claim that the trustees are required to pay to them out of accrued or accruing income such an amount as will, with the amounts received by her in her lifetime, make a sum equal to $1,200 a year from the commencement of the trust to her death, and also interest on all deferred payments. Susan E. Comstock makes a similar claim upon the trustees for the deficiency in the amount of the payments to her, and interest.

*Asa B. Woodward,* for the plaintiffs.

*Morris B. Beardsley* and *Samuel F. Beardsley,* for Strong Comstock *et al.,* executors.

*Morris W. Seymour* and *Howard H. Knapp,* for the American Home Missionary Society.

*John S. Pullman* and *James A. Marr,* for the American Board of Commissioners for Foreign Missions.

PRENTICE, J. It is apparent, from the will and facts found, that the testator intended to make provision in his will for the support of his wife during her life, and that the measure of that support, in addition to what he gave to her absolutely, was to be $1,200 a year. It is also apparent that the testator supposed that the trust created for her benefit would yield her that amount each and every year. That which he did not foresee happened, and the trust estate was for a period of years unable to yield for her the anticipated and stipulated amount. The question presented is whether he provided for that contingency, or, to be more precise, whether he so provided for it that she was entitled to make up the deficiency for any year out of the net income of after years in excess of her direct claim upon it. To justify an affirma-

tive answer to this question, it must appear that the annuity given to her was by the will charged upon the net income of the trust fund generally, and not upon the income *de anno in annum.*

The language of the will admits of little doubt upon this subject. Each year is made a financial period. The gross income for each such period is directed to be reduced to a net one by the payment of all charges and expenses, and that net amount is all disposed of. The payment to Mrs. Raymond comes first, and is expressed to be " out of the net annual income." The payments to her are required to be made at least semi-annually, thus emphasizing the distinction in the testator's mind between the paying period and the financial one. Then follows the annuity to the sister, expressed to be paid out of " any excess of said net annual income." These provisions are succeeded by those looking to the support of a missionary. This support again is charged upon the " remaining net annual income," and is made dependent upon the amount of such remainder. An excess of income over these demands being regarded as probable or possible, the testator significantly adds " if in any year there shall be an excess of said net income after fully satisfying all the provisions hereinbefore contained, . . . I direct such excess to be added to and to become a part of the principal; provided that if such excess in any year shall be more than two hundred dollars, then I give all of such excess over and above said sum of two hundred dollars, to The American Home Missionary Society,". etc. In view of the possibility that the gift of income for the support of a missionary might fail, through the failure of the church society to accept or continue to exercise the trust imposed upon it in connection therewith, the testator next provides for the disposition in such case of " the excess of said net income " after the payment of the two annuities. Having thus at the end of each year effectually disposed of all the income for that year, and thus in the end of all income, the remainder over upon the termination of the trust is given to two missionary societies.

It thus appears that the net income for each year is expressly made the fund out of which the annuity to Mrs. Raymond for that year was to be paid. There is no provision for the payment of possible deficiencies out of other or after-acquired income. There is a careful appropriation to specified objects of the whole of each year's net income in excess of the annuity, leaving no undisposed of fund to be drawn upon. The scheme of the will in respect to the trust provisions is clearly one which deals with each year's income as a separate entity, and disposes of it fully and completely. Its provisions are too definite and precise to admit of the existence of an expressed intent that deficiencies in one year's payments should be made up in subsequent years' distributions. With unexpressed intents we can have no concern. *Fairfield* v. *Lawson*, 50 Conn. 501; *Weed* v. *Scofield*, 73 id. 670. Manifestly the testator did not provide for the contingency which he did not foresee.

The claim in behalf of Mrs. Raymond's estate is not aided by the fact that the benefactions to her in the will were in lieu of dower. That fact cannot suffice to give her what the will has omitted to give. She cannot be regarded as a purchaser of that which the will does not bestow. *Lord* v. *Lord*, 23 Conn. 327; *Stelfox* v. *Sugden*, John. Rep. (High Court of Chancery, 1858–60) 234.

The parties have called our attention to adjudicated cases in support of their respective contentions. As the question involved is one which is dependent upon the construction to be given to the language of the testator as indicative of his intent, we should expect to find little that is directly in point in such adjudications, and we find little that has more than a helpful suggestiveness. In the following cases it was held that the annuities for each year were charged upon the income for that year and not upon the income generally, and yet in none of them was the language of the will as unmistakably indicative of that intent as the language here. *Appeal of Brewster*, 12 Atl Rep. (Pa.) 470; *Estate of Pierce*, 56 Wis. 560; *Casamaijor* v. *Pearson*, 8 Cl. & Fin. 69. In New York the right to recover deferred payments has been

Comstock v. Comstock.

recognized, but in these cases the wills expressly directed the annuities to be paid out of the income, without restriction and without the word "annual," and the decisions rested upon the absence of any directions that they should be paid out of each year's income. *Stewart* v. *Chambers*, 2 Sandf. Ch. (N. Y.) 382; *Matter of Chauncey*, 119 N. Y. 77. Other cases presenting similar conditions are *Pitt* v. *Dacre*, L. R. 3 Ch. Div. 295; *Darbon* v. *Rickards*, 14 Sim. 537. The case of *Booth* v. *Coulton*, L. R. 5 Ch. App. 684, presents a situation more like the present, in that certain annuities were made payable half yearly out of the "annual profits" of the trust fund. The court held that they were charged upon the income generally, but did so upon the strength of considerations arising out of the language of the will which could not be urged in the present case.

Susan E. Comstock's claim is controlled by similar considerations.

The Superior Court is advised that neither the executors of the will of Mary A. Raymond, nor Susan E. Comstock, are entitled to receive from the trustees of said trust fund, in payment of the annual sums provided in the sixth paragraph of said will to be paid to said Mary A. Raymond and Susan E. Comstock, respectively, or any part thereof, any share of the income of said fund except such as accrued during the financial year for which such payment is made.

No costs in this court will be taxed in favor of either party.

In this opinion the other judges concurred.