[No. 13585.   Department One.   February 9, 1917.]

## WARD JESSEPH, *Respondent*, v. ANNA WESTERBERG, *Appellant*, IDA EDWALL, *Respondent*.[1]

WILLS—SPECIFIC LEGACY—DATE OF BEGINNING. A will directing payment to a niece of the sum of $30 each and every month during the life of the testator's wife, payable out of the net revenues of the estate, creates a specific legacy during the lifetime of the wife, and not an annuity; and hence commences immediately upon the death of the testator.

SAME—SPECIFIC LEGACY—FROM NET INCOME—DEFICIENCIES. Should the right to claim such a legacy be postponed until there is a net revenue or until the same can be determined upon final settlement, the sums payable, with all deficiencies, are to be paid at any time when there are any net revenues available.

SAME—SPECIFIC AND RESIDUARY LEGACY—TIME FOR PAYMENT. In such a case, a further direction to pay out of the net revenues the balance and residue of said net returns to the testator's wife, once each year during her natural life, simply makes the wife a residuary legatee of the net revenues, and is not a direction for yearly accounts to the first legatee who was to be paid each month.

SAME—SPECIFIC LEGACY—DEFERRED PAYMENTS—INTEREST. Under a will directing the payment of a legacy of $30 each and every month during the lifetime of the testator's wife, out of the net revenues of the estate, deferred payments during the time in which there were no net revenues do not draw interest until there is a fund in hand.

[1]Reported in 162 Pac. 1004.

APPEAL—REVIEW—HARMLESS ERROR.   Error in admitting evidence of the intention of the testator, in an action for the construction of a will, is harmless on trial *de novo* on appeal.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered February 25, 1916, upon findings in favor of a legatee, in an action by a trustee for the construction of a will, tried to the court: Reversed.

*J. D. McCallum,* for appellant.

*Hurn & Hurn,* for respondent Edwall.

*M. E. Jesseph,* for respondent Ward Jesseph.

CHADWICK, J.—Peter Edwall died testate on the 12th day of January, 1912, leaving an estate situate in Spokane and Lincoln counties. Respondent Ward Jesseph was nominated as executor of the estate, and as trustee of the distributive interest of the decedent after final settlement. The estate was closed on March 13, 1914. The community interest of the widow, Ida Edwall, was distributed to her, and the community interest of the deceased was distributed to the respondent as trustee.

The will directs:

"My said executor to pay to Miss Anna Westerberg, of Edwall, Washington, my niece, the sum of thirty ($30) dollars each and every month during the life of my wife, Ida Edwall, out of the net revenues of my said net estate, and the balance and residue of said net revenues of my said estate, I direct my executor to pay to my wife, Ida Edwall, of Spokane, Washington, once each year during the period of her natural life."

"Fifth, After the expiration of the natural life of my wife, Ida Edwall, I direct that my entire estate, of whatsoever kind, nature and description and wherever situated, be distributed by my said executor as follows: First, to Miss Anna Westerberg, of Edwall, Washington, my niece, the sum of fifteen thousand & 00/100 dollars, ($15,000) and the balance and residue of my said estate to be divided equally among the following named persons, to wit: My brothers, Andrew Edwall and C. W. Edwall, both of Galva, Illinois, my sister,

Kate Westerberg of Edwall, Wash., and my niece, Miss Anna Westerberg, of Edwall, Wash."

Appellant, Anna Westerberg, contends that the will speaks from the testator's death, and demands $30 per month for each and every month since the testator's death, with interest on deferred payments at the legal rate. Respondent Ida Edwall asserts the meaning of the will to be that there shall be an accounting at the termination of each twelve months from and after the date of final settlement of the estate, and that it is the duty of the trustee to settle his accounts in March of each year for the preceding year and, after charging the expenses of maintaining the estate for that year, to pay appellant the sum of $30 per month for each month of that particular year; that if, at the end of the year, there be not sufficient funds in the hands of the trustee to pay the full amount which would be due appellant for that year, that is to say, $360, she must bear the loss; that her "annuity" would abate in proportion to the deficiency in the annual revenues, and if there be an excess of revenues over the sum which would go to appellant as her "annuity" it should be paid to her, Ida Edwall, under the terms of the will, irrespective of any deficiency in the amount due Anna Westerberg for previous years. For two years the estate did not earn a net revenue. In 1915, the trustee, after paying charges and expenses, had funds on hand.

Meeting with the respective contentions of the two beneficiaries under the will, and being unable to determine the right of their demands, the trustee brought this action, setting up all the facts, and praying a construction of the will and that he be directed in the discharge of his duty.

The court found:

"The said Anna Westerberg has claimed and demanded from plaintiff $30 per month for each and every month since the date of testator's death, with interest on deferred payments at the legal rate, to be paid out of the accumulated and accumulating profits of said estate; that the defendant

Ida Edwall asserts that said payment of $30 per month to Anna Westerberg, under said will, is only due and payable out of the net revenues of said estate, and that at the end of each year after the discharge of plaintiff as executor, it is the duty of plaintiff to balance the accounts of said trust and pay to defendant Westerberg $30 per month, and the balance of said profits to Ida Edwall, and that defendant Westerberg is not entitled to payments of $30 per month except said estate earns net profits during the year preceding such balance."

The intent of the testator to give to Anna Westerberg $30 for each and every month following his demise seems evident from the language employed. If the testator had intended to create an annuity to be paid out of the net annual revenues, that is, to pay Anna Westerberg $360 as an annuity, and the balance of the income of the estate to Ida Edwall, he would have employed apt language. It would require no art of expression to disclose his will, if such it were. Instead, he made a specific legacy, or what is called in some of the books, an "allowance of income." It is not an annuity, but a monthly stipend resting in the life of Ida Edwall.

The first question to be decided is whether the legacy dates from the death of the testator or from the time the estate was settled. A specific legacy to be paid currently must have a time of beginning. In this case, the testator saved all question, and has avoided that confusion which has led to frequent litigation. He has fixed a term certain. Ida Edwall was living when Peter Edwall died. The legacy, being made to rest in the life of Ida Edwall, attached immediately upon the death of the testator and continues from month to month for the life of Ida Edwall, the only limitation (we are not called upon to decide whether the legacy might be a charge upon the corpus of the estate) being that the sums are to be so paid out of the net revenues of the estate. It seems to us that this conclusion is demonstrable from the wording of the will, and is further sustained by the unusual provision fixing

the term of the legacy in the life of a third person. But, if it were otherwise, the rule is that such legacies—whether called specific or demonstrative, or allowances of income in the nature of annuities—date from the death of the testator, unless a contrary intent is made clearly to appear. 2 Jarman, Wills (6th ed.), p. 1144; *Houghton v. Franklin,* 1 Eng. Ch. 390; 2 Schouler, Wills, Executors and Administrators (5th ed.), § 1479; 2 Woerner, American Law of Administration (2d ed.), § 454.

This is well established, although the right to claim the legacy or "annuity," if it may be so called, may be postponed until after the estate has been closed and the rights of creditors barred, or until there be a net revenue out of which accumulated delinquencies can be paid. Such postponement (under the English law, which is followed in many American cases, the time for settlement is theoretically recognized as one year) is only for convenience. If "there were no debts, the court would give the fund to the party, notwithstanding there had not been a lapse of twelve months." *Garthshore v. Chalie,* 10 Vesey Jr. 1, 13; *Gibson v. Bott,* 7 Vesey Jr. 98, note; 2 Woerner, American Law of Administration (2d ed.), § 454.

The next question submitted by counsel is whether Anna Westerberg can claim, out of the revenues of the current year, an amount equal to that which she would have received in the years following the death of the testator when the estate yielded no income. What we have already said, and the authorities cited, sustain her right to do so. The words $30 "each and every month . . . out of the net revenues of my said net estate" cannot, from the very nature of things, be held to mean that the net revenue shall be determined each and every month, and the legacy be paid if there is a net balance on hand. Nor can it mean that the net revenues shall be calculated once every year, for it is well known that the net revenue of farm lands cannot ordinarily be so calculated. The phrase means, rather, that the amount to be paid shall

be paid, with all deficiencies, at the rate of $30 for each prior month, at any time there are net revenues available for that purpose.

"The will does not give the annuities out of each year's specific income, as was urged by the counsel claiming the surplus. They are given out of the whole interest and income of the estate; and the residuary legatees are to have nothing until after the payment of all the annuities. There would be no surplus income to divide, according to the terms of the will, until the annuities were paid. . . . In *Farmer v. Mills* (4 Russell, 86), the Master of the Rolls gave his opinion, that where there was a direction to pay annuities out of investments, and residuary bequests were then given, and the estate fell short; the arrears of annuities were to be made up on some of the annuitants dying, before the residuary legatees would be entitled." *Stewart v. Chambers*, 2 Sandf. Ch. (N. Y.) 382, 393.

In *In re Chauncey*, 119 N. Y. 77, 23 N. E. 448, 7 L. R. A. 361, a case very like the one at bar, there was a bequest of an annuity to an adopted son from the income of the estate. The balance of the income was to be paid to the husband. For some years there was not enough income to pay the annuity to the son. Later there was a surplus. It was held that the deficiency arising in former years should be made good from such surplus. The next of kin contended that a surplus could not be so employed, but should be distributed as a property undisposed of by the will. The court said:

"The contention of the next of kin would lead to the establishment by the trustees of a financial year which should be inflexible, and whenever the year terminated should require them to close the books and begin a new and independent term for the receipt of income. In such event the lapse of a year without the receipt of income would cause the loss of the annuity to the devisee, no matter how productive the fund might prove for succeeding years. This result must be worked out by reference to the intention of the testatrix, if sustainable at all, but we have heard no reasons drawn from the provisions of the will which support such a theory. . . .

"We are of the opinion that in case there had been a surplus of income in any year after full payment of preceding annuities, it would have been competent for the trustees to have paid it over for distribution among the next of kin, as a fund would thereby have been created which was not disposed of by the will; but that no such distribution could properly be made while any part of such annuities remained unpaid."

It was also held, upon a similar state of facts, in *Cochrane v. Walker*, 4 Dem. (N. Y.) 164, that an annuitant is entitled to have any certain excess of arrearages of lean years satisfied from the income of future years that are full.

We find in the will no language to sustain the theory that the right of appellant to participate is subject to an annual account, and if there be $360, or any part thereof, that the trustee shall pay it over in full settlement of the monthly allowance, or if there be no income or a lesser sum than $360, that the legacy abates, either wholly or *pro tanto*. To so hold would be to destroy the evident intent of the testator to make monthly provision for his legatee, and substitute therefor a legacy in the nature of an annuity with possible diminution. It is not the province of the court to make a will or to revise, according to its own notions, the act of one who has solemnly declared his purpose in the form of a last will and testament. As we have said, the clear intent of the will before us is that appellant shall have $30 for each and every month Ida Edwall lives. No time is fixed for calculating the net revenues of the estate, in so far as Anna Westerberg is concerned, and in obedience to the law, which in all cases undertakes to do the will of the testator, she is entitled to receive all payments, either present or deferred, whenever there is a surplus on hand out of which her legacy can be paid. If, at the end of any year, after the payment to her of all that is her due, any surplus remains, it is to be paid to the residuary legatee, Ida Edwall. If it were not so, the law would defeat not only the testator's intention, but Anna Westerberg's right to claim for a part, or possibly all, of the months "during the life" of Ida Edwall.

The court has given too much weight to the words "pay to
. . . Ida Edwall . . . once each year," and too little
to the words "pay to Miss Anna Westerberg, . . . the
sum of thirty ($30) dollars each and every month . . ."
He has made their claims to the estate equal in a sense, when
the testator intended that the specific legacy or allowance
should be first paid and discharged before Ida Edwall has any
right to participate in the income of the estate. She is a
residuary legatee. The provision for the payment of $30
each and every month to Anna Westerberg, and the payment
of the balance of the net revenues to Ida Edwall, can be con-
strued without doing violence one to the other. They mean
no more than that Anna Westerberg shall be entitled to $30
for each month, and that once each year the trustee shall
have an account and settlement and pay to Ida Edwall what-
ever might be remaining in his hands at that time.

The authorities relied upon by counsel for respondent are
based upon the assumption that there is some language in
the will from which an intention can be inferred that the leg-
acy is to be paid out of the surplus from year to year, and
not from the net revenues of the estate without limitation as
to time. They provide for the distribution of annual income,
a part to one and the balance to another. They use the
words "annual income" and "payments each and every year,"
and like expressions. The theory of respondents is well set
forth and sustained in the case of *Comstock v. Comstock,* 78
Conn. 606, 63 Atl. 449. Our holding is really sustained by
the *Comstock* case. The only distinction between that case
and *Stewart v. Chambers, supra,* is pointed out as follows:

"In the following cases it was held that the annuities for
each year were charged upon the income for that year and
not upon the income generally, and yet in none of them was
the language of the will as unmistakably indicative of that
intent as the language here. *Appeal of Brewster,* 12 Atl.
Rep. (Pa.) 470; *Estate of Pierce,* 56 Wis. 560; *Casamaijor
v. Pearson,* 8 Cl. & Fin. 69. In New York the right to re-

cover deferred payments has been recognized, but in these cases the wills expressly directed the annuities to be paid out of the income, without restriction and without the word 'annual' and the decisions rested upon the absence of any directions that they should be paid out of each year's income."

Counsel claim that, in the event of a recovery, Anna Westerberg is entitled to interest upon deferred payments. This question is not briefed by counsel for either side. Seemingly no importance is attached to the question, and we will not inquire into it further than to say that there is confusion in the American cases. 2 R. C. L. 10. In England, the rule is that arrears of an annuity do not carry interest. 2 Jarman, Wills (6th ed.), p. 1145; *Torre v. Browne*, 5 H. L. C. 555. Some cases hold that the question must be determined by reference to the facts of the particular case, and others that it is discretionary with the court. It would seem that interest would not be allowed in this case, in any event, for the monthly payments are not due until there is a fund in hand, and it is not alleged or proven that the trustee has been guilty of any misconduct or has withheld the payments unlawfully.

The court admitted evidence tending to show the intention of the testator. Granting, but without holding, that it was error to admit it, the error was without prejudice, for we have based our opinion on the will and that alone.

The judgment of the lower court is reversed. The case is remanded with directions to enter judgment in accordance with this opinion.

ELLIS, C. J., MORRIS, MAIN, and WEBSTER, JJ., concur.