[No. 15893. Department Two. August 9, 1920.]

MARGARET SMITH DAVIS *et al., Appellants,* v. MRS. ABNER BROWN *et al., Respondents.*[1]

WILLS (74) — CONSTRUCTION OF POWERS — "DEBTS" — PAYMENT. Under a will requiring payment of the testator's debts within six months, in which the testator showed special concern as to bequests of income "for a period of fifteen years from and after my death," a mortgage indebtedness of $80,000 upon the real estate was not a "debt" to be paid from income, or within six months, where it did not mature until long after that period and had not been assumed so as to be a personal liability, and the income was much too small to pay it off within six months.

Appeal from a judgment of the superior court for King county, Hall, J., entered April 24, 1920, in favor of the defendants, in an action to construe a will, tried to the court. Affirmed.

[1]Reported in 191 Pac. 1098.

*Weter & Roberts,* for appellants.

*Edgar L. Crider,* for respondents.

TOLMAN, J.—Appellants, plaintiffs below, as executors and trustees under the will of John Davis, deceased, brought this action for the purpose of obtaining a construction of the will and directions as to their duties thereunder, making all persons interested parties defendant.

The facts, which are not in dispute, are as follows: John Davis died in King county in November, 1917, leaving a last will and testament, which was admitted to probate by the superior court for King county on December 6 following.  The will reads:

"In the Name of God, Amen:

"I, John Davis, of the city of Seattle, state of Washington, being over the age of twenty-one years, and of sound mind, do hereby make, publish and declare this my last will and testament, hereby revoking all former wills heretofore by me at any time made.

"First.  I hereby declare that my wife, Margaret Smith Davis, and I have entered into a written agreement, and have executed, acknowledged and delivered conveyances each to the other, whereby all property, real, mixed and personal, now standing in my name, and all which may hereinafter stand in my name, together with all income, rents, issues and profits therefrom, is and shall be my sole and separate property, and all property, real, mixed and personal now standing in the name of my wife, Margaret Smith Davis, and all which may hereafter stand in her name, together with all income, rents, issues and profits therefrom, is and shall be her sole and separate property.

"Second:  To my wife, Margaret Smith Davis, I give and devise an undivided one-half interest to the forty-acre tract in section twenty-five (25) township twenty-six (26) north range three (3) east, which forty-acre tract was owned by my wife's father and myself as tenants in common.

''I also give and bequeath to my wife all household furniture, pictures, silverware and housefurnishings of every character and description whatsoever, for her sole and separate use and benefit, absolutely and forever.

"Third: For a period of fifteen (15) years from and after my death I give, devise and bequeath the income from all of the rest, residue and remainder of the property now owned by me, and all which I may at any time hereafter acquire, to my trustees hereinafter named, and their successors in trust, for the following uses and purposes, and for the benefit of the following named persons:

"(1) In trust to receive such income and to pay therefrom the sum of one hundred dollars ($100) per month to my mother, Mary Ryan, of Oakland, California, during the full term of her natural life;

"(2) From the monthly income remaining after the monthly payment to my mother of one hundred dollars, I will and direct my trustees to pay to Mrs. Blanche Smith and to Miss Marjorie Thomas, both of Seattle, monthly, the sum of fifty dollars ($50) each, for the period of ten years from and after my death;

"(3) The income remaining after the payments hereinbefore mentioned shall be equally divided between my son John Davis, Junior, and my sisters, Mrs. Abner Brown of Seattle, and Mrs. Jennie Quiner of Richland, Washington, and upon the expiration of such ten years, the income from my estate, after paying to my mother the monthly sum of one hundred dollars, as hereinbefore provided, shall be equally divided between and paid monthly to my son John Davis, Junior, and my two sisters hereinbefore named, and their survivors or survivor, until the expiration of fifteen years from my death, at which time the principal and income of my estate, subject to the monthly payment of one hundred dollars to my mother, if she be then living, shall be equally divided between and paid over to my son John Davis, Junior, and my two sisters hereinbefore named; and in case of the death of either my son or my two sisters prior to such time, my trustees shall divide equally between and pay over to the survivors

or survivor of my son and my two sisters hereinbefore named, the principal of such estate upon the expiration of such time.

"Fourth: Subject to the foregoing provisions, I give, devise and bequeath the rest, residue and remainder of my estate to my trustees hereinafter named, and their successors in trust, to hold and conserve the principal of my estate for the use and benefit of my son John Davis, Junior, and my two sisters, Mrs. Abner Brown and Mrs. Jennie Quiner, for the period of fifteen years from my death, and upon the expiration of such period to divide, and pay over and deliver to my son and my two sisters, or to the survivor or survivors of the three, the principal of my estate, absolutely and forever, it being my intention that in case of the death of any one of the three prior to the expiration of such fifteen years, such principal shall be divided between the survivors or survivor of them who shall be living at the expiration of such period, and that no descendent of either one of the three shall be entitled, under this will, to the share of the parent.

"Fifth: I hereby appoint as trustees under this will, my wife, Margaret Smith Davis, Abner Brown, William E. Best, Langdon C. Henry and James B. Howe, all of Seattle, giving and granting unto a majority of such trustees, and their successors, the right and authority, by an instrument in writing signed by such majority and filed in the office of the clerk of the superior court of the state of Washington for King county, to appoint a successor to any one of the trustees herein named who shall not qualify, or who, qualifying, shall thereafter resign or die.

"Sixth: I also authorize and empower my wife, Margaret Smith Davis, with the consent of three of the other trustees, to sell and dispose of any portion of the principal of my estate, upon such terms and conditions and for such price as she and such three trustees may deem advisable, and without obtaining authority from any court or judge so to do, and in such case the purchaser, after paying the purchase price,

shall not be bound to see to the application of the proceeds of such sale.

"Seventh: I appoint my wife, Margaret Smith Davis, guardian of the person and estate of my son John Davis, Junior.

"Eighth: I hereby nominate, constitute and appoint my wife, Margaret Smith Davis, executrix, and Abner Brown, William E. Best, Langdon C. Henry and James B. Howe, executors, of this my last will and testament. In case any one or more of them shall not qualify, or, if after qualifying, shall die or resign, those qualifying or surviving, as the case may be, shall have all the powers which all of them would have had if all had qualified, and shall settle my estate and deliver the same to my trustees hereinbefore named. I will and direct that my estate be settled in the manner provided in this my last will and testament; that no bond or bonds shall be required of my trustees or any of them, or any successor of any one of them, nor shall any bond or bonds be required of my executrix or of my executors, or either of them; that neither letters testamentary nor of administration shall be required of my executrix or of my executors, or either of them, and it shall not be necessary for them or either of them to take out letters testamentary or of administration, but they shall have this my last will and testament duly probated and shall file a true inventory of all of my property in the manner required by existing laws, and after the probate of this will and the filing of such inventory, and the obtaining of a decree of solvency, my estate shall be managed by my said executrix and executors until my debts be paid, if any shall exist at the time of my death, and upon such payment, or upon the expiration of the time for the presentation of claims against my estate, my executrix and executors shall deliver my estate to my trustees hereinbefore named and until the time of such delivery my executrix and executors shall settle my estate without the intervention of any court, and thereafter my trustees shall settle my estate in the manner hereinbefore provided for, and without the intervention of any court or courts.

"In witness whereof, I have hereunto set my hand and seal to this my last will and testament, this tenth day of November, A. D. One Thousand Nine Hundred and Seventeen."

Under this will there passed into the possession of appellants, as executors, an estate consisting of personal property valued at $169,309.19, and real estate valued at $188,285. The total indebtedness of the estate, aside from the mortgages hereinafter referred to, amounted to not more than $15,000, all of which was paid by appellants in due course of administration, and before they settled their accounts as executors and proceeded to handle the estate as trustees.

Among other real estate belonging to the estate is an undivided one-half interest in lots 2 and 3, block 22, of A. A. Denny's addition to Seattle, purchased by the testator in his lifetime, and then and now subject to mortgages aggregating $160,000 on the whole, no part of which were assumed in the purchase. So that, while the testator was not personally liable for any part of the debts secured by these mortgages, and claims based thereon were not and could not have been proven as debts against his estate, yet the undivided one-half interest in the property now held by appellants as trustees is subject to such indebtedness in the principal sum of $80,000, and may be taken in payment thereof by foreclosure, if default in payment be made, though the estate cannot be held for any deficiency.

Appellants, by their complaint, ask that the will be construed, and they be directed in the following particulars:

"(a) Can plaintiffs pay income of the estate to those named as beneficiaries of the income while there is mortgage indebtedness on the real estate?

"(b) Can plaintiffs use any or all of the income of the estate in reducing and paying the mortgage indebtedness above described?

"(c) Is such mortgage indebtedness a 'debt' of the estate as described in paragraph 'eighth' of the will?

"(d) Can any of the income of the estate be used in placing improvements upon property of the estate in order to make same productive of an income?

"(e) Are those named as beneficiaries of the income entitled to the whole net income of the estate irrespective of the mortgage indebtedness above described?"

The decree of the trial court answered these questions by construing the will as follows:

"(1) That the entire income of the estate, less only running and management expenses thereof, and the specific bequests to Mary Ryan, Mrs. Blanche Smith, and Miss Marjorie Thomas, be paid to the defendants John Davis, Jr., Mrs. Abner Brown, and Mrs. Jennie Quiner, all as provided in the third paragraph of said will.

"(2) That no part of said income shall be used in reducing, paying off or discharging the mortgage indebtedness of the estate or any part thereof, except only to pay interest.

"(3) That no part of said income shall be used in placing permanent improvements upon any property of the estate.

"(4) That the payment, in whole or in part, of the principal of said mortgage indebtedness can only be made by the plaintiffs out of the capital of the estate or proceeds derived from the liquidation thereof."

From which result, by appeal, the case is brought here for review.

In construing a will certain fundamental rules must be always borne in mind:

"The intention which controls in the construction of a will is that which is manifest, either expressly or by necessary implication, from the language of the will,

as viewed, in case of ambiguity, in the light of the situation of the testator and the circumstances surrounding him at the time it was executed, although technical words are not used; or, as is sometimes said, the testator's intention must be ascertained from the four corners of the will. Hence a will cannot be construed by a mere conjecture as to the intention of the testator; but it is the intention which the testator expresses in his will that controls and not that which he may have had in his mind, or which is manifested by some other paper not a part of the will, or by previous declarations." 40 Cyc. 1388.

"In determining the testator's intention the court should place itself as near as possible in his position, and hence, where the language of the will is ambiguous or doubtful, should take into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed, such as the fact that the will was written by the testator who was not a professional man, the condition of the family and the amount and character of his property, the state of the property devised, the testator's relation to the beneficiaries, and the mode of life in which his family has been reared and the means provided by him in his lifetime for their culture and happiness . . ." 40 Cyc. 1392.

These principles were early recognized in this state. *Newport v. Newport,* 5 Wash. 114, 31 Pac. 428.

So, taking this will by its four corners, the intention of the testator in some respects becomes self-evident. The opening clause of paragraph three, which disposes of the income, is: "For a period of fifteen years from and after my death—." It is generally held that, where a bequest is made of income, it is payable from the time of the testator's death. *Newport v. Newport, supra; Stahl v. Schwartz,* 81 Wash. 293, 142 Pac. 651; *Jesseph v. Westerberg,* 94 Wash. 602, 162 Pac. 1004; *Matter of Harden,* 177 App. Div. 831, 164 N. Y. Supp. 1014; *Lovering v. Minot,* 9 Cush. (Mass.) 151, and

*In re Jacoby's Estate,* 204 Pa. 188, 53 Atl. 768. The testator here, although presumed to know the law, seems to have taken special pains to make his intention clear that the income should immediately pass, by adding the words "from and after my death." Moreover, the dominant note of the will shows clearly that the testator was especially concerned with the income of his estate, and took great pains to provide for its disposition with such exactness and in such detail that his intention cannot be doubted.

This being so, did he intend that the mortgage indebtedness should be regarded as indebtedness of his estate, in the full and unrestricted sense, and be paid in the course of administration as and with the general indebtedness? The will bears date but a few days before the testator's death, and it must be presumed, until the contrary clearly appears, that he had in mind the then condition of his affairs and, of course, knew of the existence of the mortgages. These were for large amounts not then due, had been carried by him since the purchase of the property with, so far as here appears, no effort to retire or reduce them, if, indeed, they could have been paid or reduced before maturity. And if he contemplated their payment within the six months allowed by law for the presentation of claims, it would seem that he would have made some specific reference to them or provision for their payment.

Again, as has been said, the testator is presumed to have known the law, and it seems unlikely that a man of his experience and business ability, who had long been engaged actively in the real estate business, could have failed to appreciate the fact that he did not owe these mortgage debts, had not, in fact, executed the notes or mortgages, did not assume them in the pur-

chase of the property, and though the property was subject to them, he and the remainder of his estate were immune from any liability thereon, or deficiency which might arise upon foreclosure. With this in mind, the language of the last paragraph of the will (the only language therein contained which refers to indebtedness of any kind) is significant:

"My estate shall be managed by my said executrix and executors until my debts be paid, if any shall exist at the time of my death, and upon such payment, or upon the expiration of the time for the presentation of claims against my estate, my executrix and executors shall deliver my estate to my trustees hereinbefore named."

It is also significant that, though the testator knew that the time for the presentation of claims was but six months, and six months' income on an estate of this size, however well invested, could not begin to pay $80,000 represented by the mortgages, yet he gave to the executors no power to sell real estate and no specific power to sell any property to pay debts.

Moreover, after having made careful disposition of the income of his estate in the three subdivisions of paragraph three of the will, it is provided in paragraph four, "subject to the foregoing provisions, I give, devise and bequeath all the rest, residue and remainder of my estate to my trustees hereinafter named, and their successors in trust, to hold and conserve the principal of my estate for the use and benefit," etc., thus showing the dominant purpose of the testator was the disposition of the income, expressly subjecting the principal of his estate to that purpose and empowering and directing the trustees to conserve the principal, with the income already segregated by the direct reference to the preceding paragraph, from the body of the estate, and otherwise disposed of. The direction

to conserve the principal under these conditions must mean the payment of the mortgages when they became due, if payment then be considered wise, by applying some part of the principal of the estate to that purpose, and, indeed, the personal estate seems ample to us, and probably seemed ample to the testator, for that purpose; especially so with the power to sell, which follows in the sixth paragraph of the will, thus enabling the trustees to dispose of such property, either real or personal, as in their judgment might best be sold. No doubt the testator considered his estate, without the income, abundantly sufficient to retire these mortgages, if that should be considered wise, and felt safe in applying the income to the support and comfort of those whom he considered entitled to his bounty.

The judgment of the trial court correctly construes the will, and is therefore affirmed.

HOLCOMB, C. J., MOUNT, and BRIDGES, JJ., concur.