FRANK M. FORBUSH & another, trustees, *vs.*
HOME FOR AGED WOMEN & another.

Suffolk.    March 9, 27, 1922. — May 29, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Trust,* Construction of instrument creating trust.    *Devise and Legacy.    Compromise concerning Will.    Contract,* Construction.

By the provisions of a trust created by a will, the trustee was directed "to pay over at convenient intervals for and during the term of their natural lives respectively, to . . . [a niece and two nephews] each the sum of $1,200 per annum," and, "should there remain any excess of net income . . . after the payment of the annuities . . . [the trustee was directed] to pay over annually all such excess" to and among certain charitable corporations, who also were made beneficiaries of the principal on the death of the survivor of the annuitants. By a compromise duly established by decree of court, an adjustment of a claim of a creditor of the estate was authorized "by the payment of one quarter of the net income of the trust fund provided for by the will to" the creditor "for life with the provision that in case of the death of the other life tenants before her decease any income so released to be divided among the survivors up to any such amount as shall be required to give each of the survivors twelve hundred dollars ($1,200) per annum thereafter." One of the nephews died. During

two years previous to his death, the net annual income had been less than $3,600, and in all other years had been more than $3,600. After the death of the nephew it was about $4,000. Upon a bill in equity by the trustee for instructions, it was *held,* that

(1) The rights of the creditor were contractual and not testamentary and were to be determined solely upon the compromise agreement;

(2) After the death of the nephew, the creditor was entitled to one third of the net income up to $1,200 per year and was not entitled to have additional payments from surplus income in order to increase to $1,200 per year what he had received annually before the death of the nephew;

(3) The rights to income given to the nephew who died ceased at his death and his estate was not entitled to additional payments, to make up for so called deficiencies that occurred in his lifetime;

(4) The surviving niece and nephew were not entitled to have made up to them the difference between one third of the income during the year when it was $3,600 or more and the one fourth thereof which they voluntarily had agreed to accept by the compromise agreement;

(5) The surviving niece and nephew were entitled each to be paid *pro tanto* out of the income in excess of $3,600, before any income was paid to the charitable corporations, amounts equal to the difference between one third of the net income for each of the two years when the net income was less than $3,600 and $1,200.

BILL IN EQUITY, filed in the Probate Court for the county of Suffolk on September 24, 1920, by the trustees under the will of Jonathan Bates, late of Boston, for instructions.

The bill was heard by *Prest,* J. Material facts are stated in the opinion. By order of the judge, a decree was entered "that the estate of Charles Bates Warren is entitled to all arrears of income from the date of the death of said Jonathan Bates to the date of the death of said Charles Bates Warren, viz: — May 24, 1920; that the surviving life tenants and Avie L. Barry respectively are also entitled to all arrears of income from the date of the death of said Jonathan Bates, each to the respective amounts of $1,200 per annum, before any 'excess' of income shall be paid over to the three charitable organizations named in the will."

The defendants, Home for Aged Couples Corporation and Home for Aged Women, appealed.

*F. M. Forbush,* for the executors, stated the case.

*R. J. White,* for Home for Aged Men.

*F. W. Kaan,* for Home for Aged Women, & *A. H. Damon,* for Home for Aged Couples Corporation, submitted a brief.

*M. Waldron,* for certain individual beneficiaries, submitted a brief.

DE COURCY, J. It is admitted that by the will of Jonathan Bates the residue of his estate was given to the plaintiffs as trustees; and that they were directed to pay from the income thereof the sum of $1,200 each per annum to his niece Sarah J. Warren, and his nephews Edward R. Warren and Charles Bates Warren, for the terms of their respective natural lives. Should there remain any excess of net income from the trust estate after the payment of these annuities, such excess was to be paid, fifty per cent to the Home for Aged Couples Corporation, twenty-five per cent to the Home for Aged Men, and twenty-five per cent to the Home for Aged Women. Upon the decease of the last survivor of the three life tenants, the trust estate is to be divided among those three corporations in the same proportion as the division of excess income.

Pending the administration, the defendant Avie L. Barry presented a large claim against the estate. The Probate Court authorized the executors to compromise the claim, in accordance with the agreement of all parties in interest. The decree, entered on July 23, 1914, provided that the executors "be authorized to adjust in their discretion said demand by compromise by the payment of one quarter of the net income of the trust fund provided for by the will to Avie L. Barry for life with the provision that in case of the death of the other life tenants before her decease any income so released to be divided among the survivors up to any such amount as shall be required to give each of the survivors twelve hundred dollars ($1,200) per annum thereafter."

Charles Bates Warren, one of said life tenants, died May 24, 1920. Until that time the net income was not sufficient to pay $1,200 a year to each of the three original beneficiaries and Avie L. Barry. The estimated annual income at present is about $4,000, and hence more than enough to pay $1,200 a year to each of the three survivors. The question raised by the bill for instructions is whether these three, and the estate of Charles Bates Warren, or any of them, are entitled to receive the surplus income thus arising since and in consequence of the death of Charles Bates Warren, to make up for the so called arrears in the payment of $1,200 per annum.

The rights of the defendant Avie L. Barry are to be determined solely from the compromise agreement; they are contractual and

not testamentary, *Ellis* v. *Hunt*, 228 Mass. 39, 43, and cases collected. The agreement is not set out in the record, but we assume that its terms are those embodied in the decree which approved its validity, and which is before us. From this decree it is plain that so long as Sarah J. Warren, Edward R. Warren and Charles Bates Warren should be living, Avie L. Barry was entitled to one quarter of the net income of the trust fund, and no more. This apparently was paid to her up to the death of said Charles Bates Warren, on May 24, 1920. Upon the death of that life tenant the "income so released" became divisible among said three survivors "up to any such amount as shall be required to give each of the survivors twelve hundred dollars ($1,200) per annum thereafter." In other words Avie L. Barry is now entitled to one third, instead of one fourth, of the income, up to $1,200 a year. The compromise agreement does not entitle her to have additional payments made from surplus income, in order to increase to $1,200 per annum the share she received from the actual net income prior to the death of said Charles Bates Warren.

The share to which said niece and nephews were entitled under the residuary clause of the will was "during the term of their natural lives respectively. . . . each the sum of twelve hundred dollars ($1,200) per annum." By the compromise agreement they consented to accept each one fourth instead of one third of the net actual income. Whatever rights the will created in favor of Charles Bates Warren terminated at his death. The share of income thereby released became payable thereafter to the survivors by virtue of the compromise agreement and in accordance with its terms. In our opinion his estate is not entitled to additional payments, to make up for so called deficiencies that occurred in his lifetime.

The question remains whether the surplus income arising since and in consequence of the death of Charles Bates Warren is to go to said Edward R. Warren and Sarah J. Warren, to make up in part for the so called arrears in the payment to them of $1,200 per annum. Under the will they were entitled to that sum per annum for the terms of their respective lives. It appears that except in 1916 and 1917 the actual net income was more than $3,600 a year; or, sufficient to pay in full the legacies to the three life tenants. Their failure to receive that amount was due to the

compromise agreement, whereby they voluntarily accepted one fourth of the income in lieu of one third, for the benefit of Avie L. Barry. They are not entitled to recover the deficiency so created by themselves. But the total net income in 1916 and 1917 was insufficient to pay the bequest to the three annuitants, even if no compromise agreement existed. As we construe the will, each of the two surviving annuitants is now entitled to the difference between one third of the net income in 1916 and $1,200, and that of 1917 and $1,200, payable *pro tanto* out of the surplus income. Their annuities were not payable "out of the net annual income," and with express provisions for the disposition of an anticipated excess during any separate annual financial period, as in *Comstock* v. *Comstock*, 78 Conn. 606. *In re Bigge* [1907] 1 Ch. 714, also relied upon by the appellants, was overruled in *In re Watkins' Settlement*, [1911] 1 Ch. 1. In our opinion these annuities were a continuing charge upon the income, and not merely upon each year's income considered as a separate financial period. In this respect the will differs from that considered in *Stelfox* v. *Sugden*, Johns. Ch. 234. The testator was providing for his next of kin; and the principal of the fund after the death of the annuitants, was bequeathed to charities. These defendant corporations, were to share only in the excess of the income after the payment of the annuities. Having in mind that the purpose of the compromise agreement was to provide for Avie L. Barry, and not to enrich the remaindermen, we think that under a reasonable construction of the agreement it does not deprive the surviving next of kin, Edward R. Warren and Sarah J. Warren, of their right to have said arrears of their annuities for 1916 and 1917 paid *pro tanto* out of the surplus income above $3,600 now in the hands of the plaintiff trustees.

The decree is reversed, and a decree in accordance with this opinion is to be entered in the Probate Court. Costs as between solicitor and client are to be taxed in the discretion of that court.

*Decree accordingly.*