EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, and JAMES M. TUNNELL, Executors of and Trustees under the Last Will and Testament of Edward W. Pyle, Deceased,

*vs.*

HARRIET R. PYLE, ROGER VANDEGRIFT, MILTON S. PYLE AND LADIES AID SOCIETY OF THE METHODIST EPISCOPAL CHURCH AT ST. GEORGE'S.

*· Sussex, Jan. 5, 1939.*

*James M. Tunnell, Sr.,* for complainants.

*Myer Ableman,* for defendants.

THE CHANCELLOR: Edward W. Pyle died on November 26, 1930, leaving a will bearing date March 7, 1930, which was duly probated on December 2, 1930. The bulk of his estate, consisting of both real and personal property, was disposed of by him in a general residuary clause in his will. By that clause he gave all the rest, residue and remainder of his estate to the complainants, as trustees, to be held and disposed of by them, as in his said will was directed.

The testator's will then provided in subsequent paragraphs as follows:

"5. I order and direct Equitable Trust Company and James M. Tunnell, Trustees as aforesaid, out of the said trust estate, to pay annually, from the date of my death, to my wife, Harriet R. Pyle, the sum of Six Thousand Dollars ($6,000.00) for and during the term of her natural life to pay annually, from the date of my death, to Roger Vandegrift, of Edgemoore, Delaware, the sum of Four Thousand Dollars ($4,000.00) for and during the term of his natural life; to pay to my nephew, Milton S. Pyle, of Moore, Pennsylvania, One Thousand Dollars ($1,000.00) per year for ten (10) years after my death, provided the said Milton S. Pyle shall live for that length of time; and to the Ladies Aid Society of the Methodist Episcopal Church at St. George's, in Baltimore Hundred, Sussex County and State of Delaware, the

sum of .One Thousand Dollars ($1,000.00) per year for ten (10) years, at least one-half (1/2) of the said fund to be used by said organization for some charitable purposes, and the other one-half (1/2) to be used for such religious purposes as the said Ladies Aid Society may determine.

"6. I direct that the above annuitants shall be paid in convenient periodical payments, and such income in the hands of my Trustees shall not be liable to the debts, contracts or engagements of the said annuitants or to those of any other person, nor shall they be capable of assignment, alienation or pledge, nor liable to attachment, execution or other legal process.

＊　　＊　　＊　　＊　　＊　　＊

"8. All income not necessary for the said annual payments shall be added to the estate in the possession of Equitable Trust Company and James M. Tunnell, Trustees as aforesaid.

"9. It is my will and desire, and I direct that my Trustees herein named, after providing for an income sufficient to maintain the annuities herein provided for, shall have the authority to erect and maintain in Baltimore Hundred, Sussex County and State of Delaware, or in the vicinity of the same, some charitable institution, and suggest that the same be either a hospital, a home for children, or a home for adults, or any combination of the same.

"10. My Trustees herein appointed shall have full authority to locate, acquire real estate, construct and furnish the said institution, the necessary funds for such acquisition, construction and furnishing to be furnished by my said Trustees.

"11. It is my will and desire, and I hereby direct that the sum of Two Hundred Thousand Dollars ($200,000.00) of my estate shall not be used in said acquisition, construction, etc., but shall, upon the formation of the corporation herein mentioned, be turned over to such corporation as an endowment fund for said institution.

＊　　＊　　＊　　＊　　＊　　＊

"15. It is my purpose by this Will to empower my said Trustees in such manner as to permit them to purchase, erect or maintain such institution at any time after my death when the said Trustees shall determine if the funds arising from my estate are sufficient to justify such an expenditure, whether such expenditure be prior to the death of any of the annuitants herein mentioned or subsequent thereto, and the judgment of my said Trustees as to this adequacy shall be conclusive on all persons, it being my desire that whatever institution may be organized, erected or maintained shall at all times have for investment for income not less than the sum of Two Hundred Thousand Dollars ($200,000.00).

"16. While I have in this my Will given specific direction with regard to the corpus of my estate, I desire to vest in my said Trustees a broader power than is herein limited with regard to the application of the residue of my estate after the payment of said annuities, and it being my intention that my estate shall be used for the alleviation of suffering in Baltimore Hundred and vicinity, I authorize and empower my said Trustees, or the survivor of them, in their uncontrolled discretion, to establish such institutions as in their judgment will meet my desires in said matter by the establishment of such institution or by the division of my residuary estate among institutions then in existence in Baltimore Hundred, or its immediate vicinity, for such charitable work as I have indicated, and I direct that approximately one-half (1/2) of my estate in a round sum be set apart as endowment funds for the institutions which my Trustees may select as beneficiaries.

"17. In case by reason of age or illness, any beneficiary under this my Will shall become incapable of receiving and disbursing the income to which he or she is entitled, I authorize and empower my Executors and Trustees to pay and apply such income to the comfortable maintenance and support of such incapacitated beneficiary without being required to apply to any Court for leave to make such payment.

"18. * * * However, it is my desire, and I do suggest to my said Executors and Trustees that my real estate in the City of Philadelphia * * * shall be held a reasonable number of years because of my belief that property in the neighborhood of its location will greatly appreciate in value during the next few years. However, this is not a direction, but a suggestion to said Executors and Trustees for their guidance, subject to their judgment in case of extraordinary circumstances arising."

At the time of his death, the testator owned personal property having a value of slightly over $100,000, and real estate in the City of Philadelphia, subject to a mortgage of $85,000, having a gross value of $250,000, according to an appraisement made by the Philadelphia Real Estate Board. In April of 1937, the said real estate was appraised by one insurance company at $158,000, and by another at $127,000. It consisted of one building in Philadelphia which appears to have been known as the Pyle Building, located at the southeast corner of Arch and Thirty-third Streets. At the time of the testator's death, this building was yielding a gross annual rental of $38,000. At one period after his death, it was unoccupied for more than a year; this was prior to December, 1935. On December 1, 1935, it was

leased for a five year period at a graduated rental which started at $9,500 per year for the first year and reached $10,500 per year for the fifth year.

The net income to the trust estate from both the real and personal property held therein was $20,700 for the year 1931. It was only $9,811.13 for the year 1934. In 1935 there was a net loss of $1,579.36. In 1936 and 1937 there was a net income of $8,174.37 and $4,743.46, respectively. It is estimated that in the current year of 1938 there will be a net income of $4,880. What the income condition was in 1932 and 1933 does not appear.

The annual payments called for by paragraph 5 of the will to the individuals therein named, all of whom are living, and to the Ladies Aid Society of the Methodist Episcopal Church at St. George's in Baltimore Hundred, Sussex County, amount to $12,000.

As the income from the trust estate is not sufficient to pay the annuities in full, the question to be determined is whether the deficiency can be paid out of the capital of that estate.

When those charged with the payment of annuities have in their hands a fund producing income sufficient to pay them, the very nature of such payments ordinarily suggests that they should be made from the income and not from the principal of the trust estate. *Cummings v. Cummings,* 146 *Mass.* 501, 16 *N. E.* 401. See, also, *Hals. Laws of England, Vol.* 24, *p.* 505. In the absence of a specific direction to that effect, any other rule would usually be contrary to sound business principles. When there is no clear provision, charging an annuity on the corpus of a trust estate, whether the testator intended to charge that fund with the payment of any deficiency of income, applicable to such annuities, is often a question of considerable difficulty, and necessarily depends on the language of the will, when read as a whole. *Hals. Laws of Eng., Vol.* 24, *pp.* 491, 492, etc.

The initial gift of an annuity is not always in the same form, but, generally speaking, when the testator's general residuary estate is given to trustees, who are directed to pay annuities of specified amounts to specified persons out of the income arising from that estate, and that provision is followed by a further provision ultimately giving the corpus of such estate to other persons, the cases seem to be divided into two classes. *Hals. Laws of Eng., Vol.* 24, *p.* 493.

In the first class, the gift is treated as one of "a legacy and a residuary bequest" and the annuities held to be a charge on the corpus, as well as on the income of the trust estate.

In the second class, the gift is treated as one of "a tenant for life and remainderman", and the annuity is not charged on the corpus of the trust estate. *Hals. Laws of Eng., Vol.* 24, *p.* 493.

As I have already pointed out, paragraph 5 of Mr. Pyle's will directs the trustees to pay the annuities therein provided for "out of the said trust estate". But in order to ascertain the intent of the testator, that item must be read in connection with all of the other provisions of the will.

Paragraph 6 directs that "the above annuitants shall be paid in convenient periodical payments, and such income in the hands of my trustees shall not be liable to the debts * * * of the said annuitants."

Paragraph 8, also, provides that "all income (from the trust estate) not necessary for the said annual payments shall be added to the estate in the possession of" the trustees.

Paragraph 9 is even more significant as to the testator's intent. It provides that the trustees "after providing for an income sufficient to maintain the annuities herein provided for shall have the authority to erect and maintain in Baltimore Hundred, Sussex County and State of Delaware, or in the vicinity of the same, some charitable institution;" and

suggests that it be either a hospital, or a home for children or adults.

Paragraph 15 relates to the same subject as paragraph 9. It empowers the testator's trustees to erect or maintain such institution as is provided for in that item "at any time after my death when the said trustees shall determine if the funds arising from my estate are sufficient to justify such an expenditure, whether said expenditure be prior to the death of any of the annuitants herein mentioned or subsequent thereto."

In the same paragraph, the testator states that it is his desire "that whatever institution may be organized, erected, or maintained, shall at all times have for investment for income not less than the sum of Two Hundred Thousand Dollars."

In Paragraph 16 he stated that while he had given specific directions with regard to "the corpus" of his estate, he desired to vest in his trustees a broader power than was therein limited "with regard to the application of the residue of my (his) estate after the payment of said annuities."

In the same item, after stating that it was his intention that his "estate" should be used for "the alleviation of suffering in Baltimore Hundred and vicinity," he gave broader powers to his trustees with respect to the charitable purposes for which his estate could be used.

Paragraph 17, also, provides that if any beneficiary "shall become incapable of receiving and disbursing the income to which he or she is entitled," the testator's executors and trustees are authorized to apply "such income" to their comfortable maintenance and support.

The defendants contend that that part of paragraph 16 which provides for "the application of the residue of my estate after the payment of said annuities" to charitable purposes, particularly when read in connection with the

testator's general directions in paragraph 5 that the annuities therein provided for should be paid "out of the said trust estate," indicates an intent to charge such annuities on the corpus of that estate, in case the income therefrom should be insufficient to pay them. See *Phillips v. Gutteridge, 46 Eng. Repr.* 664; *Mills v. Drewitt, 20 Beav.* 632; *Haworth v. Makins, L.R.* [1909] 2 *Ch.* 19, *C. A.; In re Mason, L.R.,* 1878, 8 *Ch. Div.* 411.

Independent of the effect of the word "residue," this contention is made on the theory that an unlimited, indefinite charge of income, including rents and profits, is usually a charge on the corpus of the trust estate just as an unlimited, indefinite gift of income is generally a gift of the corpus.

But when both of these provisions are read in connection with the other provisions of the will, including paragraphs 8 and 9 and the remaining provisions of paragraph 16, it is apparent that the annuities given were merely intended to be charged on and payable out of income, and that the whole of the corpus of the trust estate was intended to be kept intact and ultimately used for the charitable purposes mentioned by the testator in paragraph 16 and in other paragraphs of his will. *Stelfox v. Sugden, 1 John.* 328, 70 *Eng. Repr.* 410; *Einbecker v. Einbecker, 162 Ill.* 267, 44 *N. E.* 426. See, also, the reasoning of the court in *Baker v. Baker, 6 H. L. Cas.* 616, 10 *Eng. Repr.* 1436, though it involved somewhat different facts.

In fact, when read as a whole, there is nothing in the will to indicate that Mr. Pyle ever considered the possibility that the income from the trust estate would not be more than sufficient to pay the annuities given by him. See *Stelfox v. Sugden, 1 John.* 328, 70 *Eng. Repr.* 410; *Sheppard v. Sheppard, 32 Beav.* 194. This is not only shown by the provision directing any surplus income after the payment of annuities to be added to the corpus of the trust fund, but by other provisions of the will relating to the contemplated charities.

Where the trustees of an estate are directed to pay an annuity, and the corpus of the estate is given to other persons on the death of the annuitant, or on some other contingency, but the gift over is "subject to the annuity," in the absence of anything clearly showing a contrary intent, an intent to charge that estate with the payment of such part of the annuity as the income from the trust fund is insufficient to pay is frequently indicated. *Hawarth v. Makins, L. R.* [1909] 2 *Ch.* 19, *C. A.*, is an example of that rule. In that case the Master of the Rolls, in part, said:

"A mere trust for the payment of an annuity is not necessarily a trust to pay the annuity only out of income accruing during the life of the annuitant. If, however, you find a trust to pay out of income with no such limit, as I have suggested, and then a disposition of the estate, subject to the annuity, that charges the annuity upon the corpus of the estate just as much as a gift of real estate subject to the payment of the testator's debts charges the debts upon the real estate." See, also, *In re Young, L.R.* [1912] 2 *Ch.* 49; *Einbecker v. Einbecker,* 162 *Ill.* 267, 44 *N. E.* 426; *Hals. Laws of Eng., Vol.* 24, *p.* 493, *note.*

Where an intent to charge the corpus of the trust estate otherwise appears, there may be other cases in the same class in which no such words as "subject to the annuity" appear. See *Boyd v. Buckle,* 10 *Sim.* 395; *Hals. Laws of Eng., Vol.* 24, *p.* 493.

In the absence of anything to show a contrary intent (see *Stelfox v. Sugden,* 1 *John.* 234, 70 *Eng. Repr.* 410, and *Sheppard v. Sheppard,* 32 *Beav.* 194) the same rule would ordinarily apply when the gift over is of "the residue of my estate after the payment of said annuities." *Curran v. Green,* 18 *R. I.* 329, 27 *A.* 596; *Einbecker v. Einbecker,* 162 *Ill.* 267, 44 *N. E.* 426.

But as I have already indicated there are other provisions that show that the word "residue" was used by the testator in a sense that does not permit that conclusion.

In view of the provisions of paragraph 9, directing the trustees to set apart sufficient funds to produce the necessary income "to maintain the annuities herein provided for,"

and the other provisions of the will, the only reasonable construction of the phrase in paragraph 16, relied on by the respondents, is that "the residue of my estate after the payment of said annuities" means the residue of the corpus of the trust estate not necessary to produce income to pay such annuities. See *Stelfox v. Sugden,* 1 *John.* 234, 70 *Eng. Repr.* 410. That the testator intended to preserve the corpus of his estate for other purposes is also shown by his reference to "the corpus of my estate" and to "my residuary estate" in paragraph 16.

When trustees are directed to invest a sufficient amount to pay annuities, and at a subsequent date the income becomes insufficient to pay them, they are frequently held to be a charge on the corpus of the trust estate, on the theory that their payment appeared to be the primary purpose of the testator (*Hals. Laws of Eng., Vol.* 24, *p.* 493) ; but no such question is involved here, as the trustees were only directed to set aside sufficient funds to pay the annuities before any funds should be used for the charitable purposes specified in the will, while the deficiency here has arisen before any funds were used for any such purposes.

It is pointed out that the widow of the deceased is one of the annuitants provided for in paragraph 5 of the testator's will, but though that be true she can only take what the testator gave her, and nothing more. *Stelfox v. Sugden,* 1 *John.* 328, 70 *Eng.Repr.* 410.

My conclusion, therefore, is that the annuities given in paragraph 5 of the testator's will were not intended to be charged on the corpus of the trust estate created by him.

Let a decree be prepared accordingly.