JEFFERSON ISLAND SALT MINING CO. *v.* EMPIRE BOX CORPORATION.

(*December* 4, 1941.)

LAYTON, C. J., and TERRY, J., sitting.

*James R. Morford* for plaintiff.

*Edwin D. Steel, Jr.*, for defendant.

Superior Court for New Castle County, September Term, 1941.

LAYTON, Chief Justice:

A demurrer to the original declaration in this case was overruled on May 29, 1941, in an opinion not reported. The plaintiff, nevertheless, thought it advisable to amend, and, upon leave granted, filed a new declaration attaching thereto and making a part of it certain exhibits.

The amended declaration alleges: (1) that on May 27, 1939, the parties entered into an agreement, evidenced by the plaintiff's written order (exhibit A) whereby the defendant agreed to deliver and the plaintiff agreed to accept and pay for 5,000,000 hexagon cartons of a certain kind and quality and in accordance with sample, to be shipped as ordered out by the plaintiff, a small quantity only to be manufactured on "the first run," to prove conformity, with privilege of cancellation if not in compliance; (2) that during August, 1939, the defendant delivered 570,524 cartons which, although not considered satisfactory, were, after negotiation, accepted and approved on September 27, 1939, and thereupon the plaintiff instructed the defendant to ship forthwith the balance of the order towit, 4,429,476 cartons, at the agreed price of $4.60 for each thousand; (3) that the defendant refused to make shipment of the balance of the cartons at the agreed price, and offered to make delivery only at an advanced price, and, as a result, the plaintiff advised the defendant that it had been obliged to purchase certain of its requirements from another source at a price higher than the contract price; (4) that the dispute between the parties was the subject of negotiation, and on November 22, 1939, the defendant informed the plaintiff that it was willing to furnish a total of 4,000,000 cartons at $4.95 a thousand, in lieu of the balance of 4,429,476 cartons at $4.60 a thousand, which offer was rejected on December 8, 1939, and the plaintiff demanded that the defendant deliver the cartons as ordered;

(5) that on December 13, 1939, the defendant proposed in writing (exhibit B) that it would carry out the contract upon receipt of definite assurance from the plaintiff that the cartons already delivered were satisfactory, this to be evidenced in a certain manner, the plantiff to order out the balance of the cartons before April 1, 1940; (6) that on December 21, 1939, the plaintiff, by letter (exhibit C) expressed its "delight" at the receipt of the letter of December 13, 1939, attached a sample of the cartons delivered in August with approval noted on it, but called attention to the fact that in the plaintiff's letter of September 27, 1939, the defendant had been advised that the plaintiff had been forced to protect itself by buying in the market additional cartons sufficient for its needs for the first three months of 1940, and at an advanced price; that the plaintiff was not demanding that the defendant pay the difference in price, in view of its letter of December 13, advising that it was "going through with this contract," but insisted that it be given "the full six months withdrawal period originally called for," and definitely obligated itself to take out the balance of 4½ million cartons before September 1, 1940; (7) that thereafter further negotiations, proposals and counter proposals took place without definite agreement until March 11, 1940, at which time the plaintiff, by telegram, informed the defendant that it would be obliged to protect its requirements for cartons on the open market on March 12, 1940, unless the defendant advised the plaintiff promptly by wire "that it would supply the plaintiff on said contract May 27, 1939 (Exhibit "A" hereto) in accordance with the plaintiff's further, proposal of December 21, 1939 (Exhibit "C" hereto)"; and thereupon, on March 11, 1940, the defendant by telegram advised the plaintiff of its acceptance of the proposal, and on the next day confirmed its acceptance by letter (Exhibit D).

It is then alleged that the contract of May 27, 1939, was abrogated by the conduct of the parties and by the refusal of the defendant to perform the same according to its terms and conditions and by its express refusal to furnish the balance of the cartons at the stipulated price; and that, as a result of the conduct and negotiations of the parties, a further contract was entered into effective as of March 11, 1940, the terms of which were the terms and conditions of the contract of May 27, 1939, as the same was supplemented, altered or changed by the plaintiff's letter of December 21, 1939, and whereby "the plaintiff obligated itself to receive and accept and the defendant obligated itself to ship and deliver the balance of * * * 4,429,476 hexagon salt cartons at the price of * * * $4.60 per * * * 1000 cartons on or before the 1st day of September, 1940"; that prior to September 1, 1940, the plaintiff instructed the defendant to deliver the balance of the cartons in accordance with approved samples, and was at all times ready and willing to accept delivery and to pay the agreed price therefor, but the defendant refused to deliver the cartons prior to September 1, 1940, or at any subsequent time; wherefore, the plaintiff was required to purchase cartons from other manufacturers at a price of $6.00 for each thousand cartons, and has lost and will lose the sum of $1.40 on each thousand of the undelivered 4,429,476 cartons, or the sum of $6,201.27 with interest.

The defendant contends that the declaration discloses a fatal repugnancy. The argument is that the plaintiff might have alleged a cause of action based on the agreement of May 27, 1939, as modified on March 11, 1940 with respect to the time of delivery and acceptance; or have alleged a cause of action based on the later agreement, considered as a substantive contract, on the theory that the parties intended to cancel the original agreement in its

entirety. It is insisted that the plaintiff has done neither, but has combined both theories in a single count. It is said that there is nothing in the exhibits attached to the declaration to support the allegation that the original contract had been abrogated; and authority is cited in support of the principle that a new contract, with reference to the subject matter of a former one, does not destroy its obligation except in so far as the new one is inconsistent therewith, unless the parties intended the new contract to supersede the old one. This principle may be accepted. But one party to an existing contract may agree with the other party to accept from him in the future a stated performance in satisfaction of the subsisting contractual duty. This is an accord. In such case, it is the performance of the accord which is to be the satisfaction of the claim. The original duty is not discharged; the right to enforce that duty is suspended for a reasonable time. If the new agreement is breached by the debtor, the creditor may either enforce the original duty or the subsequent contract. Whether the parties agreed that the new promise in itself or performance of the accord should be the satisfaction of the original cause of action is often difficult to determine as a matter of fact. The presumption is that performance was intended, for it is not a probable inference that the creditor agreed merely to exchange his present cause of action for another; and in such situation, where the debtor has breached the new agreement, the creditor may enforce either the original duty or the subsequent contract. But, the parties may agree that the new promise itself shall be the satisfaction of the pre-existing duty and where this is clearly shown, the original claim is at once extinguished, and the claimant's remedy is on the new promise. 1 *C. J. S., Accord and Satisfaction*, § 22, *p.* 489 *et seq;* 6 *Williston, Contracts, Rev. Ed.,* § 1841, 1846-1848; *Restatement, Con-*

*tracts,* § 417, 418; 1 *Am. Jur.* 254; 3 *Elliott, Contracts,* §2074.

■ It is not expressly alleged that the new promise was accepted in satisfaction of the existing contractual duty. It is alleged, however, that the former contract was abrogated by the conduct of the parties, and that a new contract was entered into. It is asserted that the original contract was breached by the defendant with resulting damage of which the defendant had notice. From the exhibits it appears that during the negotiations leading to the formation of the new contract, the plaintiff offered to waive its claim for this damage. The final agreement of the parties, undoubtedly, contemplated the surrender by the plaintiff of its right of action growing out of the defendant's breach of its original contractual duty; and when the new contract was entered into, that right of action was extinguished. It is sufficiently clear, therefore, that the plaintiff accepted the new promise as an immediate satisfaction of the defendant's pre-existing contractual liability. The cause of action was properly based on the agreement of March 11, 1940, whereby the defendant agreed to deliver, and the plaintiff agreed to accept the balance of 4,429,476 hexagon salt cartons comformable to approved sample, at the price of $4.60 the thousand, on or before September 1, 1940.

The demurrer is overruled.