EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, and JAMES M. TUNNELL, Executors of and Trustees under the Last Will and Testament of EDWARD W. PYLE, deceased,

*vs.*

HARRIET R. PYLE, ROGER VANDEGRIFT, MILTON S. PYLE and LADIES AID SOCIETY OF THE METHODIST EPISCOPAL CHURCH AT ST. GEORGE'S.

*Sussex, November 13th, 1943.*

*James M. Tunnell, Jr.,* for complainants.

*James B. Carey,* for Harriet R. Pyle and Roger Vandegrift.

*Frederick P. Whitney,* for Ladies Aid Society of the Methodist Episcopal Church at St. George's.

Milton S. Pyle was not represented.

HARRINGTON, Chancellor: Edward W. Pyle, late of Sussex County, Delaware, died November 26th, 1930, leaving a will bearing date March 7th, 1930, which was duly probated as such on December 2nd of that year. The bulk of his estate, consisting of both real and personal property, was disposed of by the general residuary clause of his will. By that clause, he gave all of the rest, residue and remainder of his estate to the complainants, as trustees, to be held and disposed of by them, as directed by his said will. That instrument, in part, provided as follows:

"5. I order and direct Equitable Trust Company and James M. Tunnell, Trustees as aforesaid, out of the said trust estate, to pay annually, from the date of my death, to my wife, Harriet R. Pyle, the sum of Six Thousand Dollars ($6,000.00) for and during the term of her natural life; to pay annually, from the date of my death, to Roger Vandegrift, of Edgemoor, Delaware, the sum of Four Thousand Dollars ($4,000.00) for and during the term of his natural life; to pay to my nephew, Milton S. Pyle, of Moore, Pennsylvania, One Thousand Dollars ($1,000.00) per year for ten (10) years after my death, provided the said Milton S. Pyle shall live for that length of time; and to the Ladies Aid Society of the Methodist Episcopal Church at St. George's, in Baltimore Hundred, Sussex County and State of Delaware the sum of One Thousand Dollars ($1,000.00) per year for ten (10) years, at least one-half (½) of the said sum to be used by said organization for some charitable purposes, and the other one-half (½) to be used for such religious purposes as the said Ladies Aid Society may determine.

"6. I direct that the above annuitants shall be paid in convenient periodical payments, * * *

* * * * * *

"8. All income not necessary for the said annual payments shall be added to the estate in the possession of Equitable Trust Company and James M. Tunnell, Trustees as aforesaid.

"9. It is my will and desire, and I direct that my Trustees herein named, after providing for an income sufficient to maintain annuities herein provided for, shall have the authority to erect and maintain in Baltimore Hundred, Sussex County and State of Delaware, or in the vicinity of the same, some charitable institution, and suggest that the same be either a hospital, a home for children, or a home for adults, or any combination of the same.

\*    \*    \*    \*    \*    \*

"15. It is my purpose by this Will to empower my said Trustees in such manner as to permit them to purchase, erect or maintain such institution at any time after my death when the said Trustees shall determine if the funds arising from my estate are sufficient to justify such an expenditure, whether such expenditure be prior to the death of any of the annuitants herein mentioned or subsequent thereto, and the judgment of my said Trustees as to this adequacy shall be conclusive on all persons, it being my desire that whatever institution may be organized, erected or maintained shall at all times have for investment for income not less than the sum of Two Hundred Thousand Dollars ($200,000.00).

"16. While I have in this my Will given specific direction with regard to the corpus of my estate, I desire to vest in my said Trustees a broader power than is herein limited with regard to the application of the residue of my estate after the payment of said annuities, and it being my intention that my estate shall be used for the alleviation of suffering in Baltimore Hundred and vicinity, I authorize and empower my said Trustees, or the survivor of them, in their uncontrolled discretion, to establish such institutions as in their judgment will meet my desires in said matter by the establishment of such institution or by the division of my residuary estate among institutions then in existence in Baltimore Hundred, or its immediate vicinity, for such charitable work as I have indicated, and I direct that approximately one-half (½) of my estate in a round sum shall be set apart as endowment funds for the institutions which my Trustees may select as beneficiaries."

In Item 5, the trustee was, therefore, directed "out of the said trust estate, to pay annually," from the date of the testator's death, to his widow, Harriet R. Pyle, "the sum of" $6,000.00, "for and during the term of her natural life"; "to pay annually," from the date of the testator's death, to Roger Vandegrift "the sum of" $4,000.00, "for and during the term of his natural life"; "to pay to" the testator's nephew, Milton S. Pyle, $1,000, "per year for ten (10) years after my

death," provided he "shall live for that length of time"; "and to" the Ladies Aid Society of the Methodist Episcopal Church at St. George's, in Baltimore Hundred, Sussex County, Delaware, "the sum of" $1,000 "per year for ten (10) years."

When the will is read as a whole, it is apparent that these payments are intended to be made from income. *Equit. Trust Co. v. Pyle*, 24 *Del.Ch.* 1, 3 *A.2d* 764. Since 1931, the annual income from the corpus of the trust has not been sufficient to make them in full, and they have, therefore, been pro rated. See *Equitable Trust Co. v. Pyle, supra.* In that year Milton S. Pyle and the Ladies Aid Society were each paid $1083.29; but during the whole of the ten year period from 1931 to 1940, inclusive, the former was paid $5,916.87 and the latter $5,917.01. In 1941, 1942 and in January of 1943, payments were made to Milton S. Pyle, aggregating $939.03, and to the Ladies Aid Society, aggregating $939.29. The latter payments were made on the theory that these legatees were entitled to a portion of the income until the full amount of $10,000 had been paid to them, respectively; but the question is whether they are entitled to any more than their proportionate parts of the annual income during the entire ten year period. The testator apparently did not anticipate that the income from the trust created by him would ever be insufficient to pay all of the annuities given by his will, and made no provision for that contingency; but there was a material shortage, beginning with the second year after his death, which has continued ever since.

During the continuance of an annuity, in the absence of some provision indicating a contrary intent, any arrearages in its payments because of insufficient income in any year, can usually be made up from surplus income in subsequent years.. *First National Bank of Tom's River v. Levy*, 123 *N.J.Eq.* 21, 195 *A.* 820, affirmed 126 *N.J.Eq.* 493, 9 *A.2d* 789; *In re Reed's Estate*, 236 *Pa.* 572, 85 *A.* 15, *Ann. Cas.* 1914A. 208; *Brooks v. Pierce, Atty. Gen. et al.*, 266 *Mass.* 161, 165

*N.E.* 4; *L.R.A.* 1917*E*, 591; 31 *Ann.Cas.* 210. But that rule does not apply if the language of the will indicates that each year is intended to stand alone as a separate income period and any surplus at its close is clearly appropriated to other purposes. *Comstock v. Comstock,* 78 *Conn.* 606, 63 *A.* 449; *Brewster's Appeal,* (*Pa.,*) 12 *A.* 470, 7 *Sadler* 604; *Brooks v. Pierce, Atty. Gen., et al., supra; Underhill on Wills,* § 768; *L.R.A.* 1917*E*, 592; 31 *Ann.Cas.* 212. Whether an annuity be payable for life or for years, somewhat the same rules apply to the payment of any arrears from income accruing after the expiration of the annuity period. *In re Reed's Estate, supra; In re Howarth,* (1909) 2 *Ch.* 19; *Phillips v. Gutteridge,* 46 *Eng.Repr.* 664; *L.R.A.* 1917*E*, 596; 2 *Amer. Jur.* 829. A mere trust for the payment of an annuity is not necessarily a trust to pay it only out of income accruing during the annuity period. If there is nothing "to determine the time during which the income available for payment * * * is limited, then it may be a continuing charge" on its proper proportion of the subsequent income until paid. *In re Howarth, supra; Phillips v. Gutteridge, supra.* But this case does not come within that rule. The trustees were directed "to pay (the annuities) annually" or "per year," though "in convenient periodical payments" during the year. But, whatever the meaning of Item 5 might be, if it stood alone, Item 8 is the controlling provision. See *Comstock v. Comstock, supra.* It expressly directs that "all income not necessary for the said annual payments shall be added to the estate in possession" of the trustees. The reasonable inference is that each year was intended to be a separate income period, and that any surplus at the end of it was to be added to the corpus of the trust. No other provisions of the will are inconsistent with this conclusion.

Item 9 directed that "after providing for an income sufficient to maintain the annuities," the trustees should have the authority to establish a charitable institution with the fund created by the testator.

Item 16 was not intended to affect the meaning of that provision.

In Item 15, the testator directed that the contemplated charity could be established "at any time after" his death "when" the trustees should determine that the funds of his estate were sufficient to justify the necessary expenditure; and whether "prior to the death of any of the annuitants or subsequent thereto." It was his desire, however, that any institution organized by the trustees should have "for investment for income not less than the sum of Two Hundred Thousand Dollars * * *."

My conclusion, therefore, is that no payments on account of the arrears in the annuities should have been made to Milton S. Pyle or to the Ladies Aid Society of the Methodist Episcopal Church at St. George's after the expiration of the ten year period, during which such annuities were payable. They received their proportionate parts of the income during that period, and their rights ceased at the end of it.

A decree will be entered accordingly.