OSCAR GINNS, TRUSTEE, and DELAWARE TRUST COMPANY, a corporation of the State of Delaware, CO-TRUSTEE by appointment of the Chancellor, under the will of WILLIAM TOPKIS, deceased,

*vs.*

VITELIA TOPKIS, JACOB HENRY TOPKIS and PERRY TOPKIS, Executors of the Estate of HARRY TOPKIS, THE JEWISH WELFARE SOCIETY, INC., FAMILY SOCIETY, INC., ORTHODOX ADAS KODESCH CONGREGATION, WILMINGTON GENERAL HOSPITAL ASSOCIATION, INC., DELAWARE HOSPITAL, INC., HOMEOPATHIC HOSPITAL ASSOCIATION OF DELAWARE, PALESTINE FOUNDATION FUND, BETTY TOPKIS SCHIFF, JACOB HENRY TOPKIS, PERRY TOPKIS, JACK TOPKIS, HORACE J. GINNS, RUTH GINNS DENEAU, ESTHER TOPKIS POTTS.

*New Castle, April 27, 1951.*

*William Poole,* of Southerland Berl & Potter, Wilmington, for plaintiffs.

*Henry M. Canby,* of Richards, Layton & Finger, Wilmington, for Wilmington Gen. Hospital Ass'n., Inc.

*Caleb S. Layton,* of Richards, Layton & Finger, Wilmington, for Delaware Hospital, Inc.

*Robert H. Richards, Jr.,* of Richards, Layton & Finger, Wilmington, for Homeopathic Hospital Ass'n. of Delaware.

*Robert B. Walls, Jr.,* Wilmington, for Betty Topkis Schiff and Jack Topkis.

*Alexander L. Nichols,* of Morris, Steel, Nichols & Arsht, Wilmington, for Family Society, Inc.

*Thomas Herlihy, Jr.* and *Herman Cohen,* Wilmington, for Jacob Henry Topkis and Perry Topkis, individually and as Executors under the will of Harry Topkis, deceased.

*David S. Keil,* of Keil & Keil, and *Abraham Hoffman,* Wilmington, for The Jewish Welfare Soc., Inc.

*Leighton S. Dorsey,* Wilmington, for Esther Topkis Potts.

*Thomas Muncy Keith,* Wilmington, for Oscar Ginns, Trustee for Vitelia Topkis.

*Joseph H. Flanzer,* Wilmington, for Othodox Adas Kodesch Congregation.

SEITZ, Vice Chancellor: William Topkis died testate on November 21, 1925. He devised the home dwelling to his widow and left the remainder of his property in trust for several enumerated purposes. In view of certain developments which have taken place during the administration of the trust, the co-trustees need the instructions of this court.

The testamentary trust provision directs the trustees to "pay and dispose of the net income of said trust fund, during the lifetime of my said wife, such payments to be made in the following order, viz.:

"(1) Five Thousand Dollars shall be paid in semi-annual installments unto my said wife, Vitelia Topkis;

"(2) One Thousand Dollars shall be paid in semi-annual installments unto my brother, David L. Topkis, for and during the term of his natural life if he shall live as long as my said wife; but if he shall die before my said wife, then at his death such payments of One Thousand Dollars a year shall cease and determine; * * *

"(3) [same as (2) except to brother Harry Topkis.]

"(4) to (9) [each of six different agencies to be paid one hundred dollars yearly.]

"(10) Five Hundred Dollars shall be paid yearly unto 'Palestine Foundation Fund,' a Corporation of the State of New York; All of said bequests shall be paid in the order hereinbefore given, so that if the total income from said trust fund paid in any year be insufficient to pay all of said bequests, they shall be paid in full in the order of

priority as above given so far as the income is sufficient for that purpose;

"(11)   To pay from any balance of said net income the sum of Five Hundred Dollars to each nephew or niece of mine and each nephew or niece of my wife's upon their marriage as a wedding gift in accordance with my custom heretofore, the payment of such wedding gifts however shall continue only as long as my wife shall live.

"All the remainder of said net income of said trust estate, shall be paid half-yearly unto my said wife, Vitelia Topkis.

"*And In Further Trust*, upon the arrival of my adopted daughter, Esther Topkis, at the age of twenty-five years, provided that shall occur during the lifetime of my said wife, to withdraw from the principal of said trust fund the sum of Twenty-five Thousand Dollars, the securities to be converted for that purpose to be determined at the discretion of the said Trustees, and to pay the said sum of Twenty-five Thousand Dollars unto my said adopted daughter, Esther Topkis; provided always, however, that such withdrawal shall not reduce the said trust estate to such an extent as to make it incapable of yielding at least Five Thousand Dollars a year after such withdrawal, and if such withdrawal of said sum of Twenty-five Thousand Dollars shall so reduce said trust estate as to render it incapable of producing at least Five Thousand Dollars yearly income, then I direct that the said sum of Twenty-five Thousand Dollars shall not be so withdrawn but the payment of said legacy to my adopted daughter shall be deferred until the death of my wife as hereinafter provided."

All trust income beneficiaries were paid in full from the date of the first administration of the trust until 1930 when there was insufficient income to cover all the charitable income beneficiaries.  From 1930 until 1941 there was never sufficient net income to make the entire $5,000 annual payments to Vitelia Topkis.  During this period the payments to her fell short in an aggregate amount of $17,439.51.  However, in the subsequent ten years, 1941 to 1950, the income in each year has exceeded the sum of $5,000.  In consequence, the trustees have accumulated upwards of $14,000 concerning which they seek instructions.

At or about the time Esther Topkis arrived at the age of 25 years (1939), $25,000 could not have been with-

drawn from the corpus of the trust fund without reducing the trust fund so as to make it incapable of yielding at least $5,000 a year after such withdrawal. No withdrawal was made. The trustees have apparently now decided that the corpus is sufficient to pay Esther Topkis Potts the sum from principal without reducing the income to less than $5,000 per annum. Vitelia Topkis is still living.

The trustees seek instructions with respect to the following questions:

(1)  Under the provisions of the will relating to the income payments to Vitelia Topkis, did such provisions create an annuity chargeable upon income generally, with a deficiency in any year to be made up from surplus income in excess of $5,000 in succeeding years?

(2)  Under the provisions of the will dealing with the $25,000 legacy to Esther, may the trustees now make the payment even though Vitelia Topkis is still living and the payment to Esther could not have been made at or about the time she reached her twenty-fifth birthday?

(3)  Are the $500 payments from net income to nieces and nephews who married to be paid whether or not there was a sufficient surplus net income during the year of their marriage to make such payments?

The rule of construction generally applicable where there is doubt as to whether or not a testamentary provision creating an annuity is chargeable against income generally is stated in *Equitable Trust Co. v. Pyle*, 27 *Del. Ch.* 258, 261, 34 *A. 2d* 361, 362:

"During the continuance of an annuity, in the absence of some provision indicating a contrary intent, any arrearages in its payment, because of insufficient income in any year, can usually be made up from surplus income in subsequent years. * * * But that rule does not apply if the language of the will indicates that each year is intended to stand alone as a separate income period and any surplus at its close is clearly appropriated to other purposes."

It is argued that the language of the present will permits a construction which would authorize the use of surplus to make up arrearages. Let us consider the tests set forth in the *Pyle* case in the light of the testamentary language here involved.

An examination of the quoted language of the will indicates that each year is in fact intended to stand alone as a separate income period. This is demonstrated by the many references to annual and semi-annual payments. Indeed some of the provisions of the· will could not be carried out except on the basis of accepting each year as a separate income period, e. g., the provision giving the surplus to the widow.

The second prerequisite mentioned in the *Pyle* case is also here present, viz., the surplus at the close of each year is clearly appropriated to a designated purpose. Under the second Item Par. (11) it is to be paid to the widow.

While it might be argued that the provision dealing with the payment of surplus applies only to net income over and above that necessary to make up prior deficiencies, I do not believe that such a contention can be accepted in view of the holding in *Equitable Trust Co. v. Pyle, supra.* Moreover, Paragraph (10) of the second Item directs that if the total income from the trust fund paid in any year is insufficient to pay all the bequests, then they shall be paid in full in the order of priority given insofar as the income is sufficient for that purpose. By this language and by the language dealing with the Esther Topkis bequest, the testator recognized the possibility of insufficient annual income to make the designated payments. Yet he made no provision to cover such a situation. Moreover, if arrearages were to be made up, there is no reason why, under the language of the will, the arrearages due all the beneficiaries should not be paid before payments for subsequent years were made to the widow. Yet this possibility would fly in the face of the testator's expressed desire to see that

the corpus was sufficient to pay at least $5,000 per year. Clearly, the $5,000 yearly income referred to was for his widow.

I conclude that the provisions relating to income payments to Vitelia Topkis did not create an annuity chargeable upon income generally.

The next question is whether the $25,000 legacy to Esther Topkis can now be paid by the trustees in view of the fact that the payment could not have been made at or about the time of her twenty-fifth birthday without so reducing the corpus as to render it incapable of yielding at least $5,000 a year income, although such a payment could be now made and Vitelia is still living.

Counsel for the defendant Esther Topkis contends that the $25,000 legacy should be paid because the trustees have now decided that the $25,000 can be paid without rendering the trust incapable of yielding at least $5,000 a year after such withdrawal and the language of the will, fairly read, does not preclude such payment. Other defendants say that under the will the decision could only be made at or about the time Esther reached her twenty-fifth birthday. The issue, therefore, is whether, under the language of the will, the legacy was to be paid at any time during the period after Esther reached 25 years of age and before Vitelia died or whether it was only to be paid if the required condition of the trust existed at or about the time Esther reached the age of 25 years.

It is argued that because the testator used the language "upon the arrival of my adopted daughter, Esther Topkis, at the age of 25 years" he intended the matter of the $25,000 payment to be determined only at that time. The word "upon" can of course mean at one particular time or it can mean after such time depending upon the context in which it is employed. Certain matters are evident from a reading of this will in connection with this payment.

The testator clearly desired his daughter to have $25,000 when she reached 25 years of age unless the payment would jeopardize his wife's income. Thus the only limitation which the testator imposed was imposed for the protection of his wife. It would thus seem that if at any time during the pendency of the trust the payment could be made without jeopardizing the wife's income such payment should be made. This construction comports with the evident intention of the testator both with respect to his wife and his adopted daughter.

Counsel arguing against the power of the trustees to now make such payment rely on *Pennsylvania Hospital v. Stewardson*, 3 *Watts & S., (Pa.,)* 93. That case is distinguishable on at least two grounds. First, the power to ascertain whether the estate was of sufficient value to make certain payments was given to executors and the court pointed out that the law limits the time for settling estates. In consequence, it would not be assumed that the testator intended to have the value judgment made after the legal time for settling the estate. Second, deferring the determination of value in that case would have frustrated in part the testator's intention to benefit certain relatives. Here, the later determination by the trustees does not conflict with any other provisions of the will.

The trustees seek instructions concerning the factors relevant to their determination of value. Under the language of the will the trustees have within their sound discretion the power to determine whether or not the $25,000 can be paid without rendering the trust incapable of yielding at least $5,000 per year during the balance of Vitelia Topkis' life. In arriving at this decision the trustees must take into consideration all reasonable factors relevant to a prediction of the future income of the trust and the life expectancy of Vitelia Topkis.

I therefore conclude that in its context the word "upon" refers to a continuing state which came into being when

Esther Topkis became 25 years old.  If the trustees have determined that the payment can be made upon the condition imposed in the will, the trustees can now pay the $25,000 legacy to Esther Topkis.

I now consider whether the $500 payments to nieces and nephews who married can be paid in any year in which there is an available surplus or whether the payments are lost if a sufficient surplus was not available during the year in which they were married.

In answering this question, it would seem that the general approach should be that the payments are to be made unless the language of the will fairly precludes that course of action.  The testator clearly desired that his and his wife's nieces and nephews should receive $500 upon their marriages.  There is nothing to suggest that he desired to wipe out such gifts unless there was insufficient income to pay them at the time of their marriages.  The only limitation the testator imposed was that there be sufficient income available after making the prior enumerated payments.  Once again, as in the answer to the previous question, I conclude that the word "upon" in its context was not intended to mean at that time only but rather meant commencing at that time.  Such a conclusion implements the testator's wish without frustrating his intention with respect to other portions of his will.  I conclude that the $500 payments to the nieces and nephews who have married can be paid in any year or years when there is sufficient surplus net income during such periods available for such payments.  Priority of payment should be determined by reference to the respective marriage dates.

Order on notice.