LEE BUILDERS, INC.,

*vs.*

WILLIAM F. WELLS, JR. and CATHERINE C. WELLS, his wife, and SARAH E. WELLS, widow.

*New Castle, November 26, 1952.*

*Albert W. James* and *H. James Conaway, Jr.*, of Hering, Morris, James & Hitchens, for plaintiff.

*Daniel O. Hastings* and *Clarence W. Taylor*, of Hastings, Stockly & Walz, for defendants.

BRAMHALL, Vice Chancellor: On May 12, 1950, defendants and one J. Rowland Morgan entered into a written agreement for the sale by defendants to Morgan of parts of two lots with improvements in Elsmere, New Castle County, Delaware, defendants retaining a part of said lots for purposes hereinafter set forth.

The agreement provided, in substance: that the purchase price was to be $19,000, of which $1,000 was paid at the time of the execution of the agreement; that plaintiff at its own expense should remove the houses thereon to that portion of the lots retained by defendants, dig a cellar and erect foundations for the houses when moved, lay a sidewalk and driveway to conform to the new location; that final settlement would be made on or before September 1, 1950.

Shortly after the execution of this agreement defendants became dissatisfied with the arrangement and so informed the purchaser. After some negotiation, the parties on September 1, 1950,

executed a subsequent agreement, wherein it was provided that one Theodore Wells, Jr., a nephew of defendants, but not a party to this action, was to be paid an additional sum of $2,000. The time for settlement was extended to November 15, 1950. These agreements were later assigned by Morgan to plaintiff.

Settlement was delayed for a time by reason of the appearance of a defect in the title to one of the properties. Plaintiff also became concerned because of a suit in this court involving title to a thirty foot strip of land lying in the bed of the street upon which these lots abut. Both objections, if they were objections, were later settled to the satisfaction of plaintiff.

Difficulties again arose between the parties, largely relative to the work which was to be performed by plaintiff. Defendants again indicated their dissatisfaction with the arrangement. They informed a surveyor and a house mover whom plaintiff had sent to the property to examine the same that they were not going to comply with their obligation. Plaintiff had taken out a building permit for the removal of the buildings, had purchased the steel for the store building which it intended to erect on the property and had had it fabricated, at a total cost of approximately $10,000. Before doing the work which it had agreed to do plaintiff desired to have some definite assurance that defendants would comply with their obligations by executing and delivering to plaintiff a deed for the property. After numerous communications between the parties and their counsel, the then counsel for defendants advised counsel for plaintiff that defendants did not intend to perform their obligations under the contract and that therefore counsel for defendants did not have the authority to give to plaintiff the necessary consent to enter the property of defendants for the purpose of making the necessary improvements.

Defendant contended at the trial that the contract executed on May 12, 1950, was obtained by "high pressure" methods and was not fair, just, reasonable and equitable with respect to the interests of the defendants. Defendants further contended that the contract was breached by plaintiff by reason of plaintiff's failure prior to November 15, 1950, the date of the expiration of the agreement, to move the properties of defendants to another location on the

same lot and to make the repairs and improvements as provided by the contract. At the trial plaintiff contended that these defenses were inconsistent and requested that the defendants be instructed to elect upon which they determined to proceed. Since at that time most of the testimony to which plaintiff objected had already been introduced in evidence, I ruled that the testimony would be admitted and its admissibility determined by a later ruling.

It will not be necessary for me to determine here whether or not plaintiff's motion should be sustained. Assuming that the signatures of the defendants to the contract of May 12, 1950, may have been obtained under such circumstances that a court of equity in good conscience would not decree specific performance thereon, the fact remains that all the pertinent conditions of this contract were reaffirmed in the agreement of September 1, 1950. Defendants executed the latter agreement after full consideration and with the advice of reputable counsel. I do not see how defendants can now contend that there was any over-reaching or improper action on the part of the purchaser when later they executed an agreement containing substantially the same terms and conditions. The question of over-reaching, as far as it concerns the agreement of May 12, 1950, is therefore not now an issue. I conclude that the agreement of May 12, 1950, was ratified by the execution of the agreement of September 1, 1950, and that defendants cannot now repudiate it.

Defendants contend that plaintiff is not entitled to a decree of specific performance because plaintiff, say defendants, has not itself complied with the terms and conditions of the contract, in that it has failed to remove the houses of defendants and make the improvements called for in the agreement. Plaintiff contends that it was never given permission to enter the property of defendants for the purpose of doing the work and, further, that defendants by their own delaying tactics and by their refusal to comply with the terms of the agreement have prevented plaintiff from performing.

It is admitted by defendants that they originally did not intend to comply with the agreement of May 12, 1950. Other evidence in the case clearly corroborates that admission.

As to the agreement of September 1, 1950, the testimony shows that plaintiff, in order to determine exactly the attitude of defendants with respect to their intentions as to whether or not they would comply with that agreement, made numerous efforts to secure permission from defendants to enter the premises for the purpose of proceeding with the work which it was obligated to do. Defendants desired some assurance from the plaintiff as to its ability to comply on its part. Just what assurance was required is not clear. Nor do I understand why such assurance was necessary, since plaintiff was obligated by the agreements to proceed with the work and on a number of occasions indicated to defendants its willingness to do so. Permission to plaintiff to enter defendants' properties for this purpose was never forthcoming.

Defendants contend that under the terms of the agreements of May 12th and September 1st plaintiff was entitled to enter in order to comply with the agreement. The agreement provided that defendants were to remain in possession until settlement had been effected. It is not clear in that respect and the parties apparently were confused as to the construction of this portion of the agreement. Be that as it may, both plaintiff and defendants at the time of the negotiations assumed that it would be necessary for plaintiff to receive the consent of defendants before entering the property. As heretofore stated by this court in this case relative to this very question, on a motion to dismiss, "the actions of the parties during the life of the contract are of great weight in determining the contract's meaning." *Morgan v. Wells*, 32 *Del.Ch.* 104, 80 *A.2d* 504, 506.

In addition to the statements of the defendants themselves, the record also shows that they did not change their attitude during the life of the contract. They informed the witness who went to defendants' property on behalf of plaintiff for the purpose of making a survey of the property to lay out the lot which defendants were retaining, and again to a man whom plaintiff was contemplating employing to move the houses of defendants, that they did not intend to comply with the terms of the contract. This was also corroborated by the testimony of counsel representing the defendants at the time of the negotiations.

In order for a party seeking specific performance against another to prevail, he must show as a condition precedent to his obtaining remedy, that he has done or offered to do, or is then ready and willing to do, all such acts as shall be required of him in the execution of the contract according to its terms. In the language often used he must show himself "ready, willing, desirous, prompt and eager". 4 *Pomeroy on Equity Jurisprudence, Sec.* 1407, *p.* 1050; *Kittinger v. Rossman,* 12 *Del.Ch.* 276, 112 *A.* 388. However, the law does not require the doing of a vain and useless act. If plaintiff was willing and eager to comply with the terms of the contract, but was prevented from doing so by the acts of defendants, or if plaintiff, with the knowledge of defendants, was led to believe that defendants did not intend to carry out the contract, plaintiff is entitled to specific performance even though the time for the performance of the contract has expired. See *Wilkins v. Evans,* 1 *Del.Ch.* 156. In this respect acts insufficient in themselves to make a complete tender may operate as proof of readiness to perform. *Erkess v. Eisenthal,* 354 *Pa.* 161, 47 *A.2d* 154, 156.

I am convinced that plaintiff has demonstrated conclusively that it was always ready, eager and willing to comply with the terms of the contract. I also find that the attitude of defendants with respect to their performance of the contract was such as to lead plaintiff to believe that defendants did not intend to comply with the terms thereof.

Defendants contend that the contract in this case is not enforceable by specific performance because of its uncertainty. Defendants' contention arises out of the provision in the contract that the plaintiff should be required to "erect the foundations for the houses and install basements, to connect all heating, plumbing, sewer and water connections in a good and workmanlike manner and to carry liability insurance insuring the seller against any damage to said houses in the process of moving * * *, to connect gas and electricity and to pave sidewalks and driveway."

It is true that the contract is silent as to the exact specifications for the work which plaintiff agreed to perform. There is also apparently a dispute between the parties as to the manner and as

to the extent of the work which plaintiff agreed to do. However, this section of the contract is subsidiary to the main engagement, which is for the conveyance of the real estate by defendants to the plaintiff. As to this it appears to be complete and certain in every respect. It is as to this only with which the prayer for specific performance is concerned. Uncertainty in a subsidiary part of an agreement whose main particulars are sufficiently certain will not prevent a decree of specific performance. *Kleinschmidt v. Central Trust Co.*, 103 *Or.* 124, 203 *P.* 598; *Clark v. Richardson*, 222 *Ind.* 4, 51 *N.E.2d* 484; *Locklear v. Tucker*, 69 *Idaho* 84, 203 *P.2d* 380. See also *Williston on Contracts, (Rev.Ed.) Vol.* 5, *Sec.* 1424; 49 *Am.Jur., Sec.*.26, *p.* 40 and *Restatement of the Law of Contracts, Sec.* 370, *ills.* 2 *and* 3.

■■ It is necessary that the terms of a contract be set forth with such reasonable certainty that the court may not only know what order to make in granting a decree of specific performance, but also whether or not such order would be in accord with the contractual obligation. In determining whether or not a contract meets with this requirement, a court will avail itself of the usual aids of construction, just as in the case of enforcement by other remedies. Common usage and reasonable implications of fact are available to the court. See *Restatement of the Law of Contracts, Sec.* 370, *p.* 673. The court will also consider that part of the contract which is claimed to be uncertain in its relation to the contract as a whole; in case of ambiguity it may be explained by oral testimony or other evidence; the intention of the parties may be disclosed by presumptions arising in the light of the facts and circumstances and by the use of common sense. *Restatement of the Law of Contracts, Sec.* 370, *Comment (c); Gluckman v. Holzman*, 29 *Del.Ch.* 458, 51 *A.2d* 487.

■ In the present case it will be presumed that it was intended that the work to be performed by plaintiff would conform to the purpose for which it was to be done and would be suitable to defendants, considering the location of the premises and general neighborhood conditions. Considering this provision in its relation to the contract as a whole, it is obvious that what was intended by the parties was to furnish defendants with such improvements as

were necessary and suitable by reason of the contemplated removal of the buildings. There should be no great difficulty in this case in determining the type and quality of the work which would be adequate and suitable. See *Lawrence v. Saratoga Lake R. Co.,* 36 *Hun. (N.Y.)* 467, 472; *Lane v. Pacific & I. N. R. Co.,* 8 *Idaho* 230, 67 *P.* 656.

I therefore conclude that any such uncertainty with respect to the work to be performed by the plaintiff which may exist under the contract is not of such a nature as would prevent the issuance of a decree for specific performance ordering a conveyance of the properties.

At the trial defendants objected to the introduction of testimony tending to prove that defendants did not intend to carry out the terms of the original agreement, defendants contending that this agreement was merged with a later agreement and that no testimony was admissible relative to the attitude of defendants with respect to the first agreement. I do not agree with this contention. The second agreement, with one exception other than the extension of time, merely reaffirms the first agreement. A new contract relating to the subject matter of the former agreement does not destroy the obligation of the former agreement, except as it is inconsistent therewith, unless it is shown that the parties intended the new contract to supersede the old contract entirely. *Jefferson Island Salt Mining Co. v. Empire Box Corp.,* 2 *Terry* 386, 23 *A.2d* 106; *Foss-Hughes v. Norman,* 2 *W.W.Harr.* 108, 119 *A.* 854. This is a question of fact to be proved by the party alleging it. *Empire Box Corp. v. Jefferson Island Salt Mining Co.,* 3 *Terry* 432, 36 *A.2d* 40. In this case the agreement itself specifically states that it is a reaffirmance of the original contract, except as therein set forth. Since any action would properly be brought under both agreements, evidence as to the attitude of the defendants with respect to the old agreement would be admissible, particularly when such testimony is followed up by convincing evidence of other similar circumstances tending to show that this dissatisfaction on the part of defendants continued after the execution of the new agreement.

I conclude that plaintiff is entitled to a decree for specific performance in accordance with the prayer of its complaint.

A suitable order will be entered on notice.